Docket No. 92832–Agenda 11–March 2002.

 
In re 
PAUL M. STORMENT, JR., Attorney, Respondent.

Opinion filed November 21, 2002.

JUSTICE KILBRIDE delivered the opinion of the court:

Central to our disposition of this case is the question of whether respondent violated Rule 1.5(g)(2) of the Illinois Rules of Professional Conduct (Code) (134 Ill. 2d R. 1.5(g)(2)) by sharing a fee with another lawyer when respondent was unable to assume the same legal responsibility for the conduct of the case as the lawyer receiving the referral. The Administrator of the Attorney Registration and Disciplinary Commission (ARDC) filed a complaint charging Paul M. Storment, Jr., respondent, with various violations of the Code. The Hearing Board (Hearing Board or Board) found that respondent had not violated Rule 1.5(g)(2) (134 Ill. 2d R.1.5(g)(2)), but that he violated Rule 1.5(f) (134 Ill. 2d R.1.5(f)) by failing to obtain his client’s written consent to a division of fees with another lawyer. The Hearing Board recommended censure. The Review Board affirmed the Hearing Board’s findings on misconduct and censure. This court granted leave to file exceptions and accepted the matter for further consideration. 134 Ill. 2d R.753(e)(5). We affirm the Boards’ findings on misconduct, but conclude that the circumstances warrant a harsher penalty than censure.

I. BACKGROUND

In 1992, this court suspended respondent’s law license for two years for advising a client to testify falsely during a child custody hearing. 
In re Storment
, MR 8487 (1992). Based on the same incident, respondent was also disbarred by the Missouri Supreme Court and by the United States District Court for the Eastern District of Missouri. Respondent’s 1992 suspension ended in September 1994. He was never reinstated, however, to practice either in the State of Missouri or before the United States District Court for the Eastern District of Missouri.

In 1995, Kevin Pleas was charged in the United States District Court for the Eastern District of Missouri in connection with a narcotics conspiracy. Pleas was referred by a former client to respondent. Respondent arranged for a meeting with Pleas and then contacted Scott Rosenblum, an attorney licensed in both Illinois and Missouri, and offered to refer Pleas to him. Respondent and Rosenblum met with Pleas at the Jefferson County jail, and both attorneys agreed to represent Pleas. The disciplinary charges at issue here arose from that arrangement.

The Administrator’s complaint charged that respondent never disclosed, either to Pleas or Rosenblum, that he had been disbarred from the United States District Court for the Eastern District of Missouri, where the Pleas case was pending, and that he was not authorized to practice law in Missouri. The complaint also alleged that Pleas did not sign any writing disclosing a division of fees between respondent and Rosenblum. The complaint further alleged that, although respondent kept $18,500 of the total fee paid by Pleas, he did not enter an appearance, prepare any pleadings, motions or other documents, or perform any substantial services on Pleas’ behalf in the criminal case.

Based on the foregoing, the ARDC claimed that respondent violated Rules 8.4(a)(4) (134 Ill. 2d R. 8.4(a)(4) (conduct involving dishonesty, fraud, deceit or misrepresentation)) and 8.4(a)(5) (134 Ill. 2d R. 8.4(a)(5) (conduct that is prejudicial to the administration of justice)); and Supreme Court Rule 771 (134 Ill. 2d R. 771) (conduct that tends to defeat the administration of justice or to bring the courts or the legal profession into disrepute). The specific basis for those general charges was that respondent: (1) divided a fee for legal services with another lawyer without the written consent of the client (see 134 Ill. 2d R. 1.5(f)); (2) participated in a division of fees that was not in proportion to the services performed and the responsibility assumed by each lawyer (see 134 Ill. 2d R. 1.5(g)); and (3) obtained a fee for the referral of a client to another lawyer while unable to assume the same legal responsibility for the performance of the services in question (see 134 Ill. 2d R. 1.5(g)(2)). In his answer, respondent denied any misconduct.

At the hearing, the following testimony was elicited. Respondent testified that he made no reference to money or to the case in the initial telephone conversation with Pleas because the call was monitored. According to respondent, he told Pleas that he was not licensed in Missouri, but that he knew a good lawyer, Rosenblum, who could help him. Respondent further testified that, when he and Rosenblum went together to meet Pleas, he again told Pleas that he was not licensed in Missouri while Rosenblum was talking with another client. After Rosenblum joined them, they discussed general defense strategy. Respondent stated that he told Pleas he would “take care of the family” and the inquiries of the family; that he would deal with the seizure by the government of a summer home in Illinois; and that he would “lend his expertise” to Rosenblum when the case went to trial and, potentially, to the court of appeals. 

Respondent stated that Pleas first inquired about fees during the initial meeting with Rosenblum. Respondent claimed that Rosenblum requested $100,000 “up front” and that Rosenblum told Pleas that both he and respondent would be working on the case for that fee. Respondent testified that the amount of cash actually delivered was $58,500. He did not give his girlfriend, Robin Johnson, a receipt for the money. To protect his client, respondent put the cash into his business account in a series of five deposits. Pleas did not want anyone to know that he had received the money. A deposit of more than $10,000 would have required the completion of an Internal Revenue Service (IRS) Form 8300. Respondent did not complete and file that IRS cash transaction report. Respondent testified that he telephoned Rosenblum and told him the money was short. Rosenblum said that he would take $40,000 and that respondent could keep the remainder. He delivered the money to Rosenblum a few days later.

Pleas testified that he met with respondent on two occasions, once alone and once with Rosenblum. Pleas denied knowing that respondent was not licensed in Missouri. Pleas further testified that when he telephoned respondent at the suggestion of Johnson, respondent offered to represent him for a fee of $100,000. Pleas stated that he arranged for this sum to be delivered to respondent in cash. According to Pleas, he discussed his case with both attorneys and understood that Rosenblum would assist in his defense. Pleas denied that respondent had advised him or anyone else in his family regarding property in Illinois. According to Pleas, he was unaware of any pleadings or briefs on his behalf by respondent. Pleas pled guilty on February 20, 1996, and was sentenced to 15 years in prison on July 27, 1996.

Rosenblum testified that he recalled only one meeting at the jail with Pleas. He stated that it was made clear to Pleas that he would be the trial lawyer. According to Rosenblum, there was no discussion about respondent’s disbarment while he was present.

Rosenblum testified that he asked for a $50,000 retainer at the first meeting and told Pleas that he would also charge $25,000 for each week of trial. There was no discussion of any fee division. Rosenblum testified that respondent delivered $40,000 to him in cash, but said that he was not told that respondent had received $18,500. Rosenblum assumed that respondent would be compensated for whatever work he did on the Pleas matter, but he had no knowledge of the arrangements for respondent’s compensation. Pursuant to his usual practice, he filed an IRS Form 8300, reflecting a receipt of the $40,000.

Rosenblum recalled that he talked to respondent periodically during the representation and was informed of respondent’s contacts with Pleas’ family, who “needed a lot of hand-holding.” Respondent gave Rosenblum some ideas about possible legal issues, including suppression of evidence, and may have sent him some case law. He also thought respondent may have been involved in a forfeiture matter involving Pleas’ property in Illinois.

Pleas’ girlfriend, Johnson, testified that she obtained $100,000 in cash from Pleas’ sister and delivered it to respondent at his office. Johnson denied talking with respondent about a forfeiture matter involving Pleas’ property. She related that she telephoned respondent on several occasions to get a status report on Pleas’ case. Johnson met with respondent on one additional occasion to pick up a power of attorney that respondent had prepared for Pleas in connection with a water damage claim to a home owned by Pleas in Illinois.

Following the close of testimony, the Hearing Board concluded that the Administrator did not prove a violation of Rule 8.4(a)(4). The Board found that the evidence did not demonstrate any false statements by respondent concerning his disbarment in Missouri. In arriving at this conclusion, the Board assessed the relative credibility of respondent and Pleas and determined that it was more probable that respondent, an attorney with considerable experience in drug conspiracy cases, would have disclosed to Pleas his reason for bringing in another attorney with similar experience. The Board further noted that the Administrator did not establish any motive for keeping his ineligibility a secret. The Hearing Board also found that respondent’s conduct in retaining $18,500 of the money paid by Pleas was not dishonest, as the evidence established that Rosenblum did not claim that he was deceived by respondent in any way, and that he assumed respondent would be compensated for his services by Pleas.

Regarding Rule 1.5(f), the Hearing Board found that respondent violated that rule because he divided a fee for legal services with another attorney without his client’s written consent. The Board noted, however, that Pleas was aware that respondent would work on his behalf and that he knew respondent would be paid for his services.

The Hearing Board found that the Administrator failed to prove that the division of legal fees was not in proportion to the services performed in violation of Rule 1.5(g). While the amounts received by each attorney seemed high for the services rendered, the Administrator did not allege excessive fees. In the absence of records establishing the time spent by each attorney, there was no basis in the record to assess the proportionate contributions of each.

The Hearing Board next found that the evidence did not establish a violation of Rule 1.5(g)(2). The Rule states:

“(g) A division of fees shall be made in proportion to the services performed and responsibility assumed by each lawyer, except where the primary service performed by one lawyer is the referral of the client to another lawyer and

* * *

(2) the referring lawyer agrees to assume the same legal responsibility for the performance of the services in question as would a partner of the receiving lawyer.” 134 Ill. 2d R. 1.5(g)(2).

The Board found that the exception clause did not apply because it had already determined that respondent and Rosenblum had engaged in a division of fees for the services performed by each. Thus, the primary service performed by respondent was not a “referral” within the meaning of the rule.

Even if the referral exception applied, the Board reasoned, the term “legal responsibility” in paragraph (2) has been construed to mean financial responsibility in the event of malpractice by the attorney handling the case. Citing 
Elane v. St. Bernard Hospital
, 284 Ill. App. 3d 865, 872 (1996), the Board rejected the Administrator’s argument that legal responsibility required an agreement by respondent that he could assume the representation of Pleas in the criminal case.

Finally, the Hearing Board concluded that respondent’s technical violation of Rule 1.5(f) did not operate to prejudice or defeat the administration of justice in violation of either Rule 8.4(a)(5) or Rule 771. Since his omission was not part of a court proceeding, it would probably not be recognized outside the legal profession as obvious misconduct by a lawyer. Therefore, respondent’s technical violation did not affect the image of the courts or the legal profession.

 After considering in aggravation respondent’s prior discipline, the Hearing Board recommended a censure. The Board, however, rejected the Administrator’s request for a finding that respondent received $100,000, rather than $58,000, and for a finding that his retention of the additional monies was dishonest. On that issue, the Board found that the testimony of Pleas and Johnson was not credible.

The Administrator filed exceptions to the report and recommendations of the Hearing Board, challenging both censure and the failure of the Hearing Board to find that respondent engaged in all of the charged misconduct. The Administrator also contended that respondent’s activities constituted the unauthorized practice of law. The Administrator further requested the Review Board to consider the respondent’s failure to file IRS Form 8300. Ultimately, the Administrator sought the disbarment of respondent.

The Review Board conducted an independent examination of the record and affirmed. In particular reference to Rule 1.5(g)(2), the Review Board agreed that an attorney’s ability to accept a referral fee is not dependent on the actual ability to practice law or assume active participation in the case. The Review Board further agreed that the technical violation of Rule 1.5(f) of the Code due to the lack of a written fee division agreement was proven, but did not require a finding that such conduct prejudiced the administration of justice or brought the courts or the legal profession into disrepute.

Since respondent was not charged with the unauthorized practice of law, the Review Board observed that due process principles might preclude consideration of this issue as an aggravating factor. The Board resolved this issue against the Administrator on other grounds, however, finding that the record disclosed that respondent lawfully provided services to Pleas and his family in Illinois. He was not shown to have provided legal services in Missouri. The Review Board also declined to consider in aggravation respondent’s failure to file IRS Form 8300, finding that this failure was not so intimately connected with the fee division arrangements as to overcome the general principle that an attorney cannot be disciplined, or disciplined more harshly, based on misconduct not charged in the complaint. The Review Board noted that even if this factor were considered in aggravation, it would not affect its decision as to the proper quantum of discipline for the misconduct.

The Review Board affirmed the findings of fact and conclusions of law of the Hearing Board and recommended censure. The case is now before us on the Administrator’s exceptions to the ruling.

II. ANALYSIS

A. Standard of Review

In attorney disciplinary proceedings, misconduct must be proved by clear and convincing evidence. 
In re Eckberg
, 192 Ill. 2d 70, 84 (2000). Deference is accorded to findings of fact made by the Hearing Board, because the Board is able to observe the demeanor of witnesses, judge their credibility, and evaluate any conflicting testimony. 
In re Spak
, 188 Ill. 2d 53, 66 (1999). Therefore, this court will not disturb the Board’s factual findings unless they are against the manifest weight of the evidence. 
In re Timpone
, 157 Ill. 2d 178, 196 (1993). Nonetheless, the recommendations of the Hearing Board and the Review Board are advisory and not binding on this court. 
In re Eckberg
, 192 Ill. 2d at 85.

In interpreting a supreme court rule, we apply the same principles of construction that apply to a statute. Our goal is to ascertain and give effect to the intention of the drafters of the rule. 
In re Estate of Rennick
, 181 Ill. 2d 395, 404 (1998). The construction of a rule, like a statute, is also a question of law that we review 
de novo
. 
Rennick
, 181 Ill. 2d at 401.

B. Rule 1.5(g)(2)

The Administrator argues that respondent violated Rule 1.5(g)(2) because respondent could not assume actual responsibility for the case. The Administrator contends that respondent’s Missouri disbarments were an ethical impediment to his receipt of attorney fees for the referral to a licensed Missouri attorney. Conversely, respondent argues, and the Boards held, that Rule 1.5(g)(2) does not anticipate that a referring lawyer actually be able to assume representation of the client. According to the Boards, the term “legal responsibility” as used in the rule refers instead to potential financial responsibility for any malpractice action against the recipient of the referral.

The Boards were persuaded by the reasoning in 
Elane v. St. Bernard Hospital
, 284 Ill. App. 3d 865 (1996). In that case, a lawyer referred a medical malpractice claim to another lawyer under a written fee agreement. The agreement provided that the referring lawyer would receive 45% of the fees if the matter were settled or tried and that she would remain legally responsible for the performance of services to the extent required by Rule 1.5. The referring lawyer became a judge shortly after the referral. When the medical malpractice case was settled, the receiving lawyer refused to pay the referral fee. The receiving lawyer claimed that Supreme Court Rule 65(F) prohibits a sitting judge from assuming legal responsibility for a referred matter. 134 Ill. 2d R. 65(F).

The referring lawyer filed a petition for adjudication of entitlement to attorney fees and the trial court entered judgment for the receiving lawyer. The appellate court reversed, holding that the term “legal responsibility”in Rule 1.5(g)(2) does not involve the practice of law within the meaning of Supreme Court Rule 65(F). 284 Ill. App. 3d at 872.

In reaching this conclusion, the 
Elane 
court relied, in part, on a Chicago Bar Association Professional Responsibility Committee opinion interpreting former Code of Professional Responsibility rules substantially identical to Rules 1.5(f) and (g) of the Rules of Professional Conduct. The committee opined that “ ‘legal responsibility,’ ” within the meaning of the rules, involved “ ‘the acceptance of passive financial guaranty obligations.’ ” 284 Ill. App. 3d at 871, quoting Chicago Bar Association PRC Op. 87–2, at 4 (1988). The court also cited with approval a 1994 advisory opinion from the Illinois Judicial Ethics Committee reaffirming this analysis and stating the “ ‘legal responsibility’ consists solely of potential financial responsibility for any malpractice action against the recipient of the referral.” 284 Ill. App. 3d at 872. The court observed that these opinions were based on the committee commentary to Rule 2–107 of the former Code. 284 Ill. App. 3d at 871-72. That commentary, in relevant part, is as follows:

“The rule expands and attempts to clarify the ABA provisions respecting division of fees among lawyers. In particular, it expressly sanctions payment of a fee to the referring lawyer where that lawyer takes no part in the actual handling of the case–a practice which is apparently prohibited by the ABA rule–so long as the referring lawyer assumes responsibility for the work of the other as though he were the other’s partner, and the total fee of the lawyers does not exceed reasonable compensation for the legal services performed. Additional language seeks to improve the ABA rule by increasing disclosure to the client, clarifying the obligations to the client of each lawyer involved, and discouraging lawyers from retaining cases which could be better handled by another.

To require actual participation in a case before a fee may be earned discourages some lawyers from referring cases they know could be better handled by another. This is not in the interest of the client or the lawyer.” 107 Ill. 2d Canon 2, R. 2–107, Committee Commentary, at 625.

We agree with the Boards that this language indicates that the rule is concerned with the financial responsibility of the referring lawyer for potential malpractice actions against the receiving lawyer.

The Administrator contends that 
Elane
 is distinguishable from the facts at hand. The Administrator cites an opinion of the New York State Bar Association Committee on Professional Ethics interpreting a provision of the New York Lawyer’s Code of Professional Responsibility (Opinion 745 (July 1, 2001)). The New York committee stated:

“From the time the New York Lawyers’ Code of Professional Responsibility was adopted until it was significantly amended in 1990, DR 2–107(A) prohibited a lawyer from receiving a referral fee merely for ‘forwarding’ a matter to another lawyer. *** The amended version of DR 2–107(A), however, now permits a division of legal fees where the following *** condition[ ] [ is] satisfied:

* * *

(2) The division is in proportion to the services performed by each lawyer, or by a writing given the client, each lawyer assumes joint responsibility for the representation.

* * *

In our view, where a lawyer is unable to assume sole responsibility for a matter due to a conflict of interest, that lawyer is also disqualified from assuming 
joint
 responsibility and, therefore, the referring lawyer may not accept a referral fee from the receiving lawyer. [Citations.] Without now deciding what the precise contours of joint responsibility are, we conclude that joint responsibility is more than financial accountability and malpractice liability.” (Emphasis in original)

While we have found ethics opinions, in general, to be instructive (see 
In re Vrdolyak
, 137 Ill. 2d 407, 422-23 (1990)), in this case the language of the New York provision and the Illinois provision are dissimilar. Rule 1.5(g) is framed in terms of the agreement of the referring lawyer to accept the same legal responsibility as would a partner of the receiving lawyer. The New York rule does not describe the scope of the phrase “joint responsibility.” Accordingly, we are persuaded that the 
Elane 
court’s interpretation of Rule 1.5(g) in conformity with Chicago and Illinois State Bar Association ethics opinions is correct. We hold that the term “legal responsibility” as used in Rule 1.5(g)(2) refers only to potential financial responsibility for any malpractice action against the recipient of the referral.

C. Rule 1.5(g)

The Administrator also contends that respondent violated Rule 1.5(g) by participating in a division of legal fees that was not in proportion to the services performed and the responsibility assumed by each lawyer. The Hearing Board found that respondent met with Pleas, consulted with members of Pleas’ family, drafted a power of attorney for Pleas’ girlfriend, gave some advice on an Illinois forfeiture matter, and discussed legal issues with Rosenblum. Evidence in the record also demonstrated that Rosenblum met with Pleas, prepared for pending motions in his criminal case, represented Pleas in court appearances, and negotiated the plea agreement.

No evidence was presented by either party, however, establishing the specific number of hours worked by each attorney. The Hearing Board observed:

“Without an allotment of time spent for various services, we are unable to determine what an appropriate division of fees would be for this matter and, concomitantly, whether the division in this case was proper. While the amounts received by each attorney seem to be high for the services rendered, the Administrator has not charged that the fees were excessive. The issue presented is whether the fees were divided proportionately. We find, in light of the lack of any records as to specific time spent by each attorney, that a violation of Rule 1.5(g) was not proved.”

The Review Board agreed, noting that the burden of proof was on the Administrator.

The Administrator argues here that the record demonstrated only minimal services performed by respondent, and that any failure of proof as to the time spent is attributable to him, since that is a matter that should be particularly within his own knowledge, and it is reasonable to expect him to come forward with the necessary proof. In support of this argument, the Administrator cites 
Belding v. Belding
, 358 Ill. 216, 220-21 (1934), where this court held:

“It is a rule well recognized, that where the evidence to prove a fact is chiefly, if not entirely, in control of the adverse party and such evidence is not produced, his failure to produce the evidence tends to strengthen the probative force of the evidence given to establish such claimed fact. [Citation.] The burden of producing evidence, chiefly, if not entirely, within the control of an adverse party, rests upon such party if he would deny the existence of claimed facts. [Citation.] Where a party alone possesses information concerning a disputed issue of fact and fails to bring forward that information, and it is shown that it can be produced by him alone, a presumption arises in favor of his adversary’s claim of fact. [Citation.]”

In the cause at hand, the Administrator failed to show that the means of proving the proportionality of the fees was in the exclusive possession of respondent such that the burden-shifting rule of 
Belding
 applies. It is essential that the Administrator prove each allegation by clear and convincing evidence. 
In re Enstrom
, 104 Ill. 2d 410, 416 (1984). The complaint alleges that respondent participated in a division of legal fees that was not in proportion to the services performed and the responsibility assumed by each lawyer. Thus, it was the Administrator’s burden to prove that the fee division was disproportionate to the services performed and the responsibility assumed by both respondent and Rosenblum.

In this regard, testimony was elicited from respondent, Rosenblum and Pleas’ girlfriend, Johnson, about the work performed by both attorneys. All three witnesses were able to describe, in some measure, the nature of the work done by both respondent and Rosenblum. Hence, neither respondent nor Rosenblum had exclusive knowledge about the services performed on behalf of Pleas, and whatever information they had, they shared with the Hearing Board, pursuant to the examination conducted by counsel for the Administrator. Moreover, there is no indication in the record that time records exist, and if such records did exist, both respondent and Rosenblum would have had to produce them to prove lack of proportionality. If the Administrator desired such records or more explicit testimony, the opportunity existed to make appropriate inquiry of both respondent and Rosenblum. Under these circumstances, the burden of going forward with evidence of time spent and services performed did not shift, but remained with the Administrator.

The Administrator also argues that since respondent was not authorized to practice law in Missouri and since respondent spent some time researching and discussing the case with Rosenblum, those activities amounted to the unauthorized practice of law, even though these services were rendered in Illinois. However, respondent was not charged with the unauthorized practice of law, nor was the issue raised or argued before the Hearing Board. This argument is, therefore, waived. See 
Eagan v. Chicago Transit Authority
, 158 Ill. 2d 527, 534-35 (1994).

For these reasons, we find no error in the findings of the Boards that a violation of Rule 1.5(g) was not proved.

D. Rule 8.4(a)

The Administrator also challenges the findings of the Boards that respondent did not engage in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of Rule 8.4(a)(4). According to the Administrator, a violation of Rule 8.4(a)(4) was proved because: (1) respondent did not disclose to Pleas or to Rosenblum that he had been disbarred in the United States District Court for the Eastern District of Missouri and was not authorized to practice law in that venue; and (2) respondent did not disclose to Rosenblum that he had received at least $58,500 on behalf of Pleas and that he had kept $18,500 for his own purposes.

Regarding this issue, the Hearing Board specifically found that Pleas’ testimony was less credible than respondent’s. The Hearing Board likewise concluded that there was no evidence of any intent by respondent to deceive either Pleas or Rosenblum. Contrary to this conclusion, the Administrator contends that the Hearing Board’s findings indicated a “naive and impractical understanding” of respondent’s conduct. In particular, the Administrator argues that the Board ignored an obvious motivation for respondent to conceal his Missouri disbarment: a potential client is apt to refuse to employ a disbarred lawyer to represent him.

Hypothesizing about what a party or a witness is “apt” to do, however, is beyond the scope of review afforded by this court. We must give great deference to the findings of the Hearing Board. 
In re Timpone
, 157 Ill. 2d 178, 196 (1993). While the conclusion urged by the Administrator could have been reached by the Hearing Board, we are not persuaded that the facts found by that body appear to be arbitrary, unreasonable or not based on evidence. Nor can we say that an opposite conclusion is apparent. Accordingly, we find no error in the Boards’ determinations that respondent did not violate Rule 8.4(a)(4).

E. Rules 8.4(a)(5) and 771

The Administrator also argues that respondent’s violation of the writing requirement in Rule 1.5(f) was prejudicial to the administration of justice and tended to bring the courts or the profession into disrepute, thus breaching Rule 8.4(a)(5) (134 Ill. 2d R. 8.4(a)(5)) and Rule 771 (134 Ill. 2d R. 771) prohibiting such conduct. Violations of these rules are generally considered subsidiary charges, dependent on proof of other, more specific violations. 
In re Witt
, 145 Ill. 2d 380, 398 (1991).

Here, the Boards concluded that respondent’s failure to obtain his client’s written consent to the fee division was merely a technical violation of the rules and had no impact on Pleas’ representation or the outcome of the case. Thus, the administration of justice could not have been undermined. Further, the Boards held that respondent’s actions did not bring the courts or the legal profession into disrepute since those actions did not occur in a court proceeding and would not be recognized by laymen as obvious misconduct.

We do not believe that respondent committed a “mere technical violation” of the rule. In 
In re Walner
, 119 Ill. 2d 511, 522 (1988), this court declined to label a rule violation a mere technicality if the record did not suggest it was a simple oversight. More specifically, in 
In re Spak
, 188 Ill. 2d 53, 67 (1999), we held that Rule 1.5(c)’s requirement of a writing in contingent fee contracts is mandatory even if the Review Board finds that the purposes of the rule were sufficiently served by the client’s knowledge of the fee terms and confirmation of the terms in writing before paying the fee. As we observed:

“[T]he Review Board’s reading of the rule would permit an attorney to wait to reduce a contingent fee to writing until after the work is done and the attorney is in possession of the proceeds of litigation. A client in such a situation may be left with the unenviable choice of agreeing with his attorney’s recollection of the fee agreement, or delaying receipt of his money pending resolution of a fee dispute. The inequality of bargaining power between the attorney and client in such a case is readily apparent. We decline to adopt a rule so fraught with potential for abuse.” 
Spak
, 188 Ill. 2d at 67.

A similar observation applies to Rule 1.5(f). The writing must not only authorize a division of fees, but also set out the basis for the division, including the respective responsibility to be assumed and economic benefit to be received by the other lawyer. The requirement of a writing ensures that the scope and terms of each lawyer’s representation are defined, thus preventing or minimizing uncertainties and disputes. Pleas’ general understanding that both respondent and Rosenblum were to be compensated for their services does not fulfill the rule’s mandatory writing requirement. For this reason, we cannot agree with the Boards’ assessment of respondents’ violation of Rule 1.5(f) as a mere technicality.

Nevertheless, we agree that the violation had no impact on either Pleas’ representation or the outcome of the case. The record lacks clear and convincing evidence of any prejudice to the administration of justice. 
In re Vrdolyak
, 137 Ill. 2d 407, 425 (1990). We also agree with the Boards’ conclusions that the violation did not bring the courts or the profession into disrepute. Therefore, it was not error to find that respondent did not violate Rule 8.4(a)(5) (134 Ill. 2d R. 8.4(a)(5)) or Rule 771 (134 Ill. 2d R. 771).

F. Evidence in Aggravation

The Hearing Board recommended censure for respondent’s violation of Rule 1.5(f) after considering in aggravation respondent’s prior discipline for advising a client to give false testimony and subsequently eliciting that testimony at a court hearing. The Board noted the difference between the nature of the prior misconduct and the current violation and accordingly gave the earlier discipline less weight than if it had resulted from wrongdoing similar to misconduct found here. The Board also observed that in 
Spak
 censure was imposed for failure to reduce a contingent fee agreement to writing. Since the only charge proven against this respondent was the failure to reduce a referral agreement to writing, the Board deemed censure to be appropriate here as well.

The Administrator then asked the Review Board for additional findings in aggravation, based on respondent’s alleged unauthorized practice of law and failure to file IRS Form 8300. The Review Board found that the complaint did not give fair notice of the additional misconduct and that the failure to file the IRS form was not sufficiently connected to the original charges to be considered in aggravation.

Before this court, the Administrator cites 
In re Rosin
, 118 Ill. 2d 365 (1987), to show that the failure to file the IRS form is sufficiently connected with the charged misconduct to be considered in aggravation. In that case, Rosin was suspended from the practice for two years and until further order of the court for engaging in conflicts of interest and making false statements to the ARDC. The court noted that the Administrator cited in aggravation Rosin’s uncharged conduct of dividing fees with a disbarred lawyer and loaning money to a company controlled by a sitting judge. 
Rosin
, 118 Ill. 2d at 388. The court did not, however, expressly state that it considered the uncharged conduct in imposing the sanction. Even if the uncharged conduct had been considered, however, the case fails to examine its relationship to the charged misconduct.

Although this court has held that procedural due process rights, including the right to fair notice, would be violated if an attorney were disciplined for uncharged misconduct (
In re Chandler
, 161 Ill. 2d 459, 470 (1994)), we have considered uncharged conduct in aggravation when it was similar to the current charges and established by evidence in the record. For example, in 
In re Elias
, 114 Ill. 2d 321, 336-37 (1986), we considered in aggravation uncharged incidents that were “illustrative of respondent’s pattern and practice of commingling and conversion as charged in *** the Administrator’s complaint.” The pattern and practice evidence consisted of the attorney’s records of transactions concerning clients whose funds were commingled and converted other than the clients specifically named in the complaint. While the complaint did not contain the names of those clients, it did provide notice sufficient to prepare a defense.

Here, the respondent’s failure to file the IRS form is not illustrative of any pattern or practice of misconduct charged in the complaint. It is entirely unrelated to respondent’s obligation under Rule 1.5(f) to obtain his client’s written consent to the referral arrangement. The Review Board did not err in refusing to consider respondent’s uncharged failure to file the IRS form in aggravation.

The same principles apply to the Administrator’s argument alleging the unauthorized practice of law. The complaint contains no notice of this allegation. Thus, the Boards correctly rejected the Administrator’s argument and refused to consider this alleged misconduct in aggravation.

III. CONCLUSION

 Although the Hearing Board’s and the Review Board’s recommendations are entitled to deference, the final determination on sanctions rests with this court. 
In re Cetwinski
, 143 Ill. 2d 396, 404 (1991). While disbarment may not be appropriate for the limited violation found in this case, we believe that censure is too lenient a penalty in view of respondent’s recidivism and his unexplained total disregard of the plain requirements of Rule 1.5(f). We would expect that an attorney who has been suspended from the practice for two years for counseling his client to commit perjury would have a heightened awareness of the necessity to conform strictly to all of the requirements of the Rules of Professional Conduct. Therefore, we order respondent suspended from the practice of law for two years.

Respondent suspended.

JUSTICE RARICK took no part in the consideration or decision of this case.