# Illinois Official Reports

## Appellate Court

<div style="border:1px solid">

### *Ferris, Thompson, & Zweig, Ltd. v. Esposito*, 2016 IL App (2d) 151148

</div>

| | |
|---|---|
| Appellate Court Caption | FERRIS, THOMPSON, AND ZWEIG, LTD., Plaintiff-Appellant, v. ANTHONY ESPOSITO, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-15-1148 |
| Filed | August 10, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 13-L-483; the Hon. Thomas M. Schippers, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Saul M. Ferris, of Ferris, Thompson, & Zweig, Ltd., of Gurnee, for appellant.<br><br>Anthony Esposito, of Waukegan, appellee *pro se*. |
| Panel | JUSTICE BIRKETT delivered the judgment of the court, with opinion.<br>Justices McLaren and Hudson concurred in the judgment and opinion. |

**OPINION**

¶ 1      Plaintiff, Ferris, Thompson, & Zweig, Ltd., and defendant, Anthony Esposito, had a long-standing work relationship. During that relationship, plaintiff referred a number of workers' compensation clients to defendant in return for a portion of the attorney fees defendant received. Each such referral was evidenced by a written agreement that each of the parties and the clients signed. When defendant refused most recently to pay plaintiff pursuant to some of these agreements, plaintiff sued defendant. Defendant moved to dismiss, claiming that the agreements did not comply with Rule 1.5(e)(1) of the Illinois Rules of Professional Conduct of 2010 (eff. Jan. 1, 2010) in that they did not expressly state that the parties assumed "joint financial responsibility" in representing the clients. The trial court granted the motion to dismiss. We reverse and remand.

¶ 2      The relationship between the parties began sometime around 2007. In 2012, before this appeal arose, defendant refused to pay plaintiff pursuant to two referral agreements, and plaintiff sued defendant in circuit court for breach of contract. Defendant moved to dismiss, arguing that the Illinois Workers' Compensation Commission, not the circuit court, had jurisdiction over the case. The trial court denied the motion, defendant appealed, and the trial court's decision was affirmed by this court (see *Ferris, Thompson, & Zweig, Ltd. v. Esposito*, 2014 IL App (2d) 130129) and our supreme court (*Ferris, Thompson & Zweig, Ltd. v. Esposito*, 2015 IL 117443) (*Ferris I*).

¶ 3      While *Ferris I* was pending in this court, defendant refused to pay plaintiff pursuant to 10 other referral agreements. As a result, plaintiff filed a 10-count complaint against defendant. Attached to the complaint were the referral agreements executed in each case. These agreements, which were executed between 2007 and 2010, provided, like the agreements in *Ferris I*, that the clients had retained plaintiff and that plaintiff had contracted with defendant for defendant to pursue the clients' workers' compensation cases on their behalf. The agreements also outlined which services each attorney would provide, and each agreement was signed by plaintiff, defendant, and the client. Nowhere did the agreements state that the attorneys assumed "joint financial responsibility" for representing the clients. Ill. R. Prof'l Conduct (2010) R. 1.5(e)(1) (eff. Jan. 1, 2010).

¶ 4      Defendant moved to dismiss pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2014)), arguing, among other things, that the agreements were unenforceable. Specifically, defendant claimed that the agreements did not comply with Rule 1.5(e)(1) in that the agreements did not state that plaintiff and defendant agreed to assume "joint financial responsibility." Ill. R. Prof'l Conduct (2010) R. 1.5(e)(1) (eff. Jan. 1, 2010). Plaintiff responded, claiming, among other things, that Rule 1.5(e), which governs referral agreements, does not mandate that a written referral agreement contain such an express statement. Ill. R. Prof'l Conduct (2010) R. 1.5(e) (eff. Jan. 1, 2010).

¶ 5      The trial court granted defendant's motion. Plaintiff moved the court to reconsider, the court denied the motion, and this timely appeal followed.

¶ 6      At issue in this appeal is whether plaintiff's complaint should have been dismissed. A section 2-615 motion to dismiss attacks the legal sufficiency of a pleading. *Vernon v. Schuster*, 179 Ill. 2d 338, 344 (1997). We review *de novo* an order granting a motion to dismiss under section 2-615. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006).

¶ 7        Resolving whether defendant's motion to dismiss should have been granted is problematic because, unfortunately, defendant has not filed a brief on appeal. While we may not reverse summarily on that basis alone, we need not serve as defendant's advocate or search the record for a basis upon which to affirm. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976); *Orava v. Plunkett Furniture Co.*, 297 Ill. App. 3d 635, 636 (1998). As relevant here, unless the record is simple and the issues can be easily decided without the aid of an appellee's brief, we may reverse "if the appellant's brief demonstrates *prima facie* reversible error and the contentions of the brief find support in the record." *Talandis*, 63 Ill. 2d at 133; see *Orava*, 297 Ill. App. 3d at 636. " 'Prima facie means, "at first sight, on the first appearance, on the face of it, so far as can be judged from the first disclosure; presumably; a fact presumed to be true unless disproved by some evidence to the contrary." [Citation.]' " *Talandis*, 63 Ill. 2d at 132 (quoting *Harrington v. Hartman*, 233 N.E.2d 189, 191 (Ind. Ct. App. 1968)).

¶ 8        We do not believe that the issue raised in this case can be easily decided. Therefore, we consider whether plaintiff's brief establishes *prima facie* reversible error. We hold that it does.

¶ 9        In so holding, we must examine Rule 1.5(e). In interpreting Rule 1.5(e), we apply the same principles that we employ in construing a statute. *In re Marriage of Nettleton*, 348 Ill. App. 3d 961, 967 (2004). Our primary goal in construing a rule is to ascertain and give effect to the drafters' intent. *Id.* The surest and most reliable indicator of the drafters' intent is the language used in the rule. *Macknin v. Macknin*, 404 Ill. App. 3d 520, 530 (2010). Accordingly, when the language in the rule is clear and unambiguous, we must apply it as written, giving the rule's language its plain and ordinary meaning. *Id.* However, if the rule is ambiguous, we may look beyond the rule's language to discern the drafters' intent, and we may consider the purpose of the rule and the evils that the rule was designed to remedy. *People v. King*, 349 Ill. App. 3d 877, 879 (2004). Moreover, when a rule is ambiguous, courts may look to the rule's committee comments to ascertain the drafters' intent. *In re Estate of Burd*, 354 Ill. App. 3d 434, 437 (2004). Regardless, whenever possible, we will avoid a construction that leads to absurd or unjust results, and we will presume that the drafters intended a sensible result rather than an absurd one. *In re Marriage of Nettleton*, 348 Ill. App. 3d at 967. Like a ruling on a motion to dismiss, we review *de novo* the construction of a rule. See *In re Marriage of Webb*, 333 Ill. App. 3d 1104, 1108 (2002).

¶ 10       Rule 1.5(e) provides:

"*A division of a fee between lawyers who are not in the same firm may be made only if*:

(1) the division is in proportion to the services performed by each lawyer, or if *the primary service performed by one lawyer is the referral of the client to another lawyer and each lawyer assumes joint financial responsibility for the representation*;

(2) *the client agrees to the arrangement*, including the share each lawyer will receive, and *the agreement is confirmed in writing*; and

(3) the total fee is reasonable." (Emphases added.) Ill. R. Prof'l Conduct (2010) R. 1.5(e) (eff. Jan. 1, 2010).

¶ 11       In ascertaining the meaning of Rule 1.5(e), we note that, in order for any fee-sharing agreement to be enforceable, the attorneys involved in the agreement must strictly comply with Rule 1.5(e). See *Donald W. Fohrman & Associates, Ltd. v. Mark D. Alberts, P.C.*, 2014 IL App (1st) 123351, ¶ 41. For the purposes of this appeal, the question is whether strict compliance

with Rule 1.5(e) occurs when a written referral agreement does not expressly state that the attorneys assume "joint financial responsibility" for representing the client. Ill. R. Prof'l Conduct (2010) R. 1.5(e)(1) (eff. Jan. 1, 2010).

¶ 12    At first sight, as plaintiff argues, the unambiguous language of Rule 1.5(e) does not provide that a written referral agreement must contain an express statement that the lawyers assume "joint financial responsibility" for representing the client. *Id.* Rather, Rule 1.5(e)(2), which mentions a writing, states that the writing must include only the client's agreement to the "arrangement, including the share each lawyer will receive." Ill. R. Prof'l Conduct (2010) R. 1.5(e)(2) (eff. Jan. 1, 2010). "[T]he share each lawyer will receive" (*id.*) seems to require the writing to show that "the division [of fees] is in proportion to the services performed by each lawyer," which is mentioned in Rule 1.5(e)(1) (Ill. R. Prof'l Conduct (2010) R. 1.5(e)(1) (eff. Jan. 1, 2010)). If the drafters had wanted the writing to expressly provide also that the attorneys assume "joint financial responsibility," as is provided also in Rule 1.5(e)(1) (*id.*), they could have so stated in Rule 1.5(e)(2). Reading into Rule 1.5(e)(2) a requirement that the writing must expressly provide that the lawyers assume "joint financial responsibility" would violate a cardinal rule of construction. See *State Farm Mutual Automobile Insurance Co. v. Hayek*, 349 Ill. App. 3d 890, 892 (2004) (in construing a court rule, "courts may not alter the rule or read into it exceptions or limitations, no matter how beneficial or desirable the result").

¶ 13    Moreover, even if the language of Rule 1.5(e) is seen as ambiguous, we believe that the last-antecedent rule, which should be employed only when the language is ambiguous, helps to illustrate what is arguably the proper construction of Rule 1.5(e). Pursuant to the last-antecedent rule, " 'relative or qualifying words, phrases, or clauses are applied to the words or phrases or clauses immediately preceding them and are not construed as extending to or including other words, phrases, or clauses more remote,' " unless the language requires such an extension. *Department of Transportation v. Singh*, 393 Ill. App. 3d 458, 465 (2009) (quoting *In re E.B.*, 231 Ill. 2d 459, 467 (2008)). Applying that rule here shows that the only thing that the written referral agreement must contain is an express statement that the client agrees to the referral and the proportion of attorney fees that each attorney involved in the referral agreement will receive.

¶ 14    The committee comments to the rule seem to support this conclusion. The comments provide that "[j]oint financial responsibility for the representation entails financial responsibility for the representation as if the lawyers were associated in a general partnership." Ill. R. Prof'l Conduct (2010) R. 1.5(e) cmt. 7 (eff. Jan. 1, 2010). That is, like lawyers in a general partnership, the attorneys involved in a referral agreement agree that, if one of them is sued by the client for legal malpractice, the other attorney is also liable. See *In re Storment*, 203 Ill. 2d 378, 392 (2002) (concluding that the term "[same] legal responsibility" (internal quotation marks omitted) in a prior version of Rule 1.5(e) "indicates that the rule is concerned with the financial responsibility of the referring lawyer for potential malpractice actions against the receiving lawyer"); see also 805 ILCS 206/305(a) (West 2014) ("A partnership is liable for loss or injury caused to a person, or for a penalty incurred, as a result of a wrongful act or omission, or other actionable conduct, of a partner acting in the ordinary course of business of the partnership or with authority of the partnership."). This "joint financial responsibility" does not concern the client and would apply regardless of whether it was provided for in the written referral agreement. Accordingly, it makes sense that the term "joint

financial responsibility" would not need to be expressly included for in the written referral agreement the attorneys have with the client.

¶ 15 Finally, a review of the history of Rule 1.5(e) suggests that the written referral agreement need not contain an express statement that the attorneys agree to assume "joint financial responsibility" in representing the client. Rule 1.5(e) arose from section 2-107(a) of the Illinois Code of Professional Responsibility (Ill. S. Ct. Code of Prof'l Res., canon 2, R. 2-107 (eff. July 1, 1980)). That section provided in part:

"(a) A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm, unless

(1) *the client consents in a writing signed by him to employment of the other lawyer, which writing shall fully disclose* (a) that a division of fees will be made, (b) the basis upon which the division will be made, including the economic benefit to be received by the other lawyer as a result of the division, and (c) the responsibility to be assumed by the other lawyer for performance of the legal services in question;

(2) *the division is made in proportion to the services performed and responsibility assumed by each, except where the primary service performed by one lawyer is the referral of the client to another lawyer and* (a) the receiving lawyer fully discloses that the referring lawyer has received or will receive economic benefit from the referral and the extent and basis of such economic benefit and (b) *the referring lawyer agrees to assume the same legal responsibility for the performance of the services in question as if he were a partner of the receiving lawyer*; and

(3) the total fee of the lawyers does not exceed reasonable compensation for all legal services they rendered to the client." (Emphases added.) *Id*.

¶ 16 Thereafter, in August 1990, the law was modified. The modification provided:

"(f) Except as provided in Rule 1.5(j), a lawyer shall not divide a fee for legal services with another lawyer who is not in the same firm, unless the client consents to employment of the other lawyer by signing a writing which discloses:

(1) that a division of fees will be made;

(2) the basis upon which the division will be made, including the economic benefit to be received by the other lawyer as a result of the division; and

(3) the responsibility to be assumed by the other lawyer for performance of the legal services in question.

(g) A division of fees shall be made in proportion to the services performed and responsibility assumed by each lawyer, except *where the primary service performed is the referral of the client to another lawyer* and

(1) the receiving lawyer discloses that the referring lawyer has received or will receive economic benefit from the referral and the extent and basis of such economic benefit, and

(2) *the referring lawyer agrees to assume the same legal responsibility for the performance of the services in question* as would a partner of the receiving lawyer.

(h) The total fee of the lawyers shall be reasonable." (Emphases added.) Ill. R. Prof'l Conduct R. 1.5(f)-(h) (eff. Aug. 1, 1990).

¶ 17 An examination of the history of Rule 1.5(e) reveals that, from the beginning, referral agreements had to be in writing. However, nothing in any of the prior versions of Rule 1.5(e) indicated that the attorneys involved in the referral agreement must expressly state that they will assume "joint financial responsibility" for representing the client. Given that the last-antecedent rule mandates that the term "writing" modify the clause immediately preceding it, and as the term "joint financial responsibility" does not immediately precede the term "writing" in any of the variations of Rule 1.5(e), it is arguable that the written referral agreement need not contain an express statement that the attorneys involved in the referral agreement assume "joint financial responsibility" for representing the client. See *Department of Transportation*, 393 Ill. App. 3d at 465.

¶ 18 The history of Rule 1.5(e) is also relevant for another reason. In contrast to what plaintiff suggests, a prior version of the rule might apply here. Given that the referral agreements were executed between 2007 and 2010, it might well be that the August 1990 version applies to all the agreements except the ones executed in 2010. Compare *Paul B. Episcope, Ltd. v. Law Offices of Campbell & Di Vincenzo*, 373 Ill. App. 3d 384, 394 (2007) (a "supreme court rule is applied retroactively, even though it was different from its predecessor rule"), with *Naughton v. Pfaff*, 2016 IL App (2d) 150360, ¶¶ 58-59 (discussing when supreme court rules apply retroactively). However, that said, we observe that, regardless of which version of Rule 1.5(e) applies, it appears that a written referral agreement might not need to contain an express statement that the attorneys involved assume "joint financial responsibility" for representing the client.

¶ 19 In reaching our conclusion, we recognize that one court, in addressing a different issue under Rule 1.5(e), determined that a written referral agreement must contain an express statement that the attorneys will assume "joint financial responsibility." See *Fohrman*, 2014 IL App (1st) 123351, ¶ 55 ("[W]e would not find there was substantial compliance with Rule 1.5(e) in this case where the attorney-client agreements did not inform the clients of the fee-sharing arrangement based on referrals, the exact split in fees, and that [the attorneys] had assumed equal financial responsibility."). The trial court here relied on *Fohrman* in finding that the written referral agreements executed in this case were unenforceable.

¶ 20 Given *Fohrman*, we see how an argument could be made that the term "joint financial responsibility" must be contained in a written referral agreement. However, as outlined above, we believe that plaintiff has presented a *prima facie* case of error. Because plaintiff has presented a *prima facie* error on this point, we will not address the other issues it raises on appeal in support of its claim that the trial court should have denied defendant's motion to dismiss.

¶ 21 Because we find that plaintiff's brief on appeal demonstrates *prima facie* error, we reverse the judgment of the circuit court of Lake County and remand the case.

¶ 22 Reversed and remanded.