# Illinois Official Reports

## Supreme Court

---

### *Ferris, Thompson & Zweig, Ltd. v. Esposito*, 2017 IL 121297

---

| | |
|---|---|
| Caption in Supreme Court: | FERRIS, THOMPSON & ZWEIG, LTD., Appellee, v. ANTHONY ESPOSITO, Appellant. |
| Docket No. | 121297 |
| Filed | May 18, 2017 |
| Decision Under Review | Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Lake County, the Hon. Thomas Schippers, Judge, presiding. |
| Judgment | Appellate court judgment affirmed. <br> Cause remanded. |
| Counsel on Appeal | Thomas W. Dillon, Michael P. Hannigan, and Amanda J. Hamilton, of Konicek & Dillon P.C., of Geneva, for appellant. <br><br> Saul M. Ferris and Austin C. Ferris, of Ferris, Thompson & Zweig, Ltd., of Gurnee, for appellee. <br><br> Bruce R. Pfaff, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association. |

CHIEF JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Justices Freeman, Thomas, Kilbride, Garman, Burke, and Theis concurred in the judgment and opinion.


**OPINION**

¶ 1        This appeal involves an action for breach of contract brought by one law firm against another after the defendant law firm refused to honor the fee-sharing provisions of the firms' joint client retainer agreements. A single question of law is presented: Are fee-sharing provisions in otherwise valid retainer agreements between clients and two separate law firms void and unenforceable if the primary service performed by one firm is the referral of the clients to the other but the agreements fail to specifically notify the clients that the lawyers in each firm have assumed joint financial responsibility for the representation?

¶ 2        Reversing the judgment of the circuit court of Lake County dismissing the plaintiff law firm's second amended complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2014)), the appellate court answered that question in the negative, rejecting the defendant law firm's argument that the agreements' lack of an express statement that the attorneys assumed joint financial responsibility violated Rule 1.5(e) of the Illinois Rules of Professional Conduct of 2010 (eff. Jan. 1, 2010) and thereby rendered the agreements invalid. 2016 IL App (2d) 151148. In reaching this result, the court declined to follow the Appellate Court, First District's decision in *Donald W. Fohrman & Associates, Ltd. v. Mark D. Alberts, P.C.*, 2014 IL App (1st) 123351, to the extent that case held that fee-referral agreements must expressly inform clients that the attorneys are assuming joint financial responsibility.

¶ 3        We allowed the defendant law firm's petition for leave to appeal in order to resolve the conflict between the appellate court's decision in this case and *Fohrman*. Ill. S. Ct. R. 315(a) (eff. Mar. 15, 2016). We also granted the Illinois Trial Lawyers Association leave to file a brief *amicus curiae*. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010). For the reasons that follow, we affirm the judgment of the appellate court and remand the cause to the circuit court for further proceedings.


¶ 4                                BACKGROUND

¶ 5        Our review in this appeal is guided by the procedural context from which it arose, a motion to dismiss under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2014)). Motions to dismiss under section 2-615 challenge the legal sufficiency of a complaint based on defects apparent on its face. When reviewing whether a motion to dismiss under section 2-615 should have been granted, we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts. The critical inquiry is whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted. A cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recover. *Kanerva v. Weems*, 2014 IL

115811, ¶ 33. Whether the trial court erred in granting or denying a section 2-615 motion presents a question of law. Our review is therefore *de novo*. *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. 2d 381, 392 (2008).

¶ 6    The pleading at issue in this appeal is plaintiff's second amended complaint. That complaint contains 10 separate but similar counts alleging breach of written contracts for the division of attorney fees earned in representing clients with claims under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2014)).[1] Attached to the complaint were copies of each of the retainer agreements signed by the various clients along with letters drafted by defendant and initialed by a representative of the plaintiff law firm confirming the terms of their respective obligations under each of the retainer agreements. Pursuant to section 2-606 of the Code of Civil Procedure (735 ILCS 5/2-606 (West 2014)), those exhibits constitute part of the pleadings and may be considered in evaluating whether the complaint is sufficient to withstand a motion to dismiss under section 2-615. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 321 (2008).

¶ 7    According to the allegations of plaintiff's second amended complaint and the attached exhibits, plaintiff, Ferris, Thompson & Zweig, Ltd., is a Gurnee, Illinois, law firm. Between 2007 and 2010 it was retained by 10 clients to represent them on their Workers' Compensation Act claims. Plaintiff, in turn, contracted with the law offices of defendant, Anthony S. Esposito, for assistance in representing the clients before the Illinois Workers' Compensation Commission (Commission).

¶ 8    A letter of understanding was drafted by defendant for each of the 10 cases. Those letters confirmed that the cases had been referred to defendant by plaintiff, outlined the parties' respective responsibilities regarding representation of the clients, and specified that, among other things, the attorney fees obtained in each case would be split between plaintiff and defendant. Defendant would retain 55% of the fee plus reimbursement for costs his office had advanced. The remaining 45% of the fee would be paid to plaintiff. The letters of understanding further provided that the terms and conditions of the agreement between plaintiff and defendant were to be disclosed to the clients and were subject to the clients' approval and consent. As requested by defendant, a representative of the plaintiff law firm signed each of the letters of understanding to affirm that those letters properly stated "the essential terms and agreement reached between [the parties'] offices."

¶ 9    The terms and conditions of the referral agreements, including the provision for division of attorney fees, were disclosed to and approved by each of the 10 affected clients through written "attorney-client agreements."[2] When the client was more proficient in Spanish, the agreement was written in that language, but the substantive provisions were identical. The agreements began by specifying that plaintiff had contracted with defendant's law firm to pursue the client's workers' compensation claim. They then detailed the particular responsibilities plaintiff and defendant would assume with respect to the representation.

---

[1]For the reasons discussed in an earlier opinion involving the same parties, the circuit court rather than the Workers' Compensation Commission had jurisdiction to hear and decide the dispute between the law firms based on the referral agreements. *Ferris, Thompson & Zweig, Ltd. v. Esposito*, 2015 IL 117443.

[2]The 10 clients are Juanita E. Garcia, Leoncio Morales, Dolores Hernandez, Eduardo Sajuan, José L. Rodriguez, Beatriz Ventura, Miguel Salgado, Fernando Colunga, Maria Tovar, and Carlos Duarte.

¶ 10    According to the agreements, plaintiff would do the following: (1) assist defendant with initial interviews and document preparation, (2) assist defendant with client contact and communication, (3) provide translation services, (4) represent the client in any related third-party action (with continued representation by defendant in certain circumstances), and (5) maintain a duplicate file containing any correspondence or filings associated with the client's claim. In return, plaintiff would be entitled to 45% of all attorney fees recovered on the claim.

¶ 11    The attorney-client agreements further provided that defendant would be responsible for (1) preparing any documents and obtaining all records necessary to disposing of the claim; (2) representing the client before the Workers' Compensation Commission[3] and conducting any investigations, negotiations, and processing necessary for concluding the claim; and (3) forwarding status reports to plaintiff at specified intervals or when significant developments occurred in connection with the claim. For these services, defendant was to receive 55% of all attorney fees recovered on the claim, plus reimbursement for costs advanced by defendant.

¶ 12    All 10 attorney-client agreements concluded with the statement "I understand and agree to the above terms and conditions" ("Yo entiendo y estoy de acuerdo con *** las condiciones escritos arriba" in the Spanish language versions) and were signed and dated by the client, by a representative of plaintiff, and by defendant.

¶ 13    According to plaintiff's second amended complaint, settlements were obtained for each of the 10 clients, yielding attorney fees ranging from $700 to $46,000. The total fees for all 10 cases amounted to $109,390.89. Under the terms of the attorney-client agreements, plaintiff was entitled to 45% of this sum. Defendant, however, refused to pay plaintiff its share of the fees. Plaintiff therefore sued defendant for breach of contract to recover the unpaid fees it was owed, plus prejudgment interest pursuant to the Interest Act (815 ILCS 205/0.01 *et seq.* (West 2010)).

¶ 14    Defendant moved to dismiss plaintiff's second amended complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2010)). The sole basis for the motion was that the attorney-client agreements failed to comply with Rule 1.5(e) of the Illinois Rules of Professional Conduct of 2010 (eff. Jan. 1, 2010) and were therefore invalid because they failed to expressly state that the plaintiff assumed joint financial responsibility for representing the clients.

¶ 15    In response to defendant's motion, plaintiff did not dispute that where one lawyer refers a case to another not in the same firm and the primary service performed by the first lawyer is the referral, Rule 1.5(e) requires the attorneys to assume joint financial responsibility for the representation if they wish to retain the right to divide the fee. Although the agreements called for plaintiff to perform various services with respect to the cases, plaintiff likewise did not dispute the primary service it was to perform under each of the agreements was the referral to defendant and that, by entering into the agreement, it therefore assumed joint financial

---

[3]The English language version of the agreements actually referred to the Commission by its former name, the Industrial Commission. The Commission's named changed to the Workers' Compensation Commission when Public Act 93-721 (eff. Jan. 1, 2005) took effect in 2005, several years before the oldest of the agreements was signed. The correct name was used in the Spanish version of the agreements.

responsibility under Rule 1.5(e). Plaintiff contended, however, that nothing in the rule required that its assumption of joint financial responsibility be expressly stated in the attorneys' contracts with the clients. In plaintiff's view, the absence of such an express statement therefore did not render void and unenforceable what were otherwise proper agreements. Plaintiff further argued that defendant should be collaterally estopped from challenging the validity of the agreements based on failure to comply with Rule 1.5(e) because defendant had raised the identical argument in an earlier, related case, the circuit court had rejected it, and defendant then elected not to challenge the circuit court's ruling in an earlier appeal.

¶ 16 In a written order filed July 2, 2015, the circuit court granted defendant's motion to dismiss. The court rejected plaintiff's estoppel argument and concluded that the language of Rule 1.5(e) required the parties' agreements with their clients to include a provision expressly providing that each lawyer would assume joint financial responsibility for the representation. It based this interpretation of the rule on the Appellate Court, First District's opinion in *Donald W. Fohrman & Associates, Ltd. v. Mark D. Alberts, P.C.*, 2014 IL App (1st) 123351, ¶¶ 36, 41, 55, which held (1) that referral agreements involving the division of fees between lawyers who are not in the same law firm are not enforceable unless they strictly comply with the provisions of Rule 1.5(e) and (2) that the requirement of strict compliance was not met in the matter before it where, among other things, the attorney-client agreements failed to provide that the lawyers had assumed joint financial responsibility for the matters. Because none of the 10 fee agreements at issue in this case specifically addressed the joint financial responsibility of the attorneys, the circuit court here held that the agreements were likewise fatally defective and that plaintiff's complaint must therefore be dismissed with prejudice.

¶ 17 Plaintiff appealed. The appellate court agreed with the holding in *Fohrman* that for a fee-sharing agreement to be enforceable, the attorneys involved in the agreement must strictly comply with Rule 1.5(e) of the Illinois Rules of Professional Conduct of 2010. 2016 IL App (2d) 151148, ¶ 11. Contrary to the *Fohrman* court, however, the appellate court rejected the view that strict compliance required referral agreements involving fee sharing to expressly provide that the lawyers assume joint financial responsibility. *Id.* ¶¶ 12-13. The lawyers did have to assume joint financial responsibility; there was no dispute about that. That they were doing so, however, did not need to be specifically laid out in their agreement with the client. Under the appellate court's reading of Rule 1.5(e), taking into account the rule's language (*id.*), committee comments (*id.* ¶ 14), and history (*id.* ¶¶ 15-18), "the only thing that the written referral agreement must contain is an express statement that the client agrees to the referral and the proportion of attorney fees that each attorney involved in the referral agreement will receive" (*id.* ¶ 13). Both requirements were satisfied in each of the 10 agreements at issue in this litigation. The appellate court therefore reversed the judgment of the circuit court granting defendant's motion to dismiss and remanded to the circuit court for further proceedings.

¶ 18 Defendant filed no brief when this matter was before the appellate court. *Id.* ¶ 7. After the appellate court ruled in favor of plaintiff, however, defendant petitioned for leave to appeal to our court. Ill. S. Ct. R. 315(a) (eff. Mar. 15, 2016). We allowed that petition. As noted at the outset of the opinion, we also granted the Illinois Trial Lawyers Association leave to file a brief *amicus curiae*. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 20    As grounds for this appeal, defendant contends that the appellate court's construction of Rule 1.5(e) in this case was erroneous; that the interpretation of Rule 1.5(e) followed by the appellate court in *Donald W. Fohrman & Associates, Ltd. v. Mark D. Alberts, P.C.*, 2014 IL App (1st) 123351, was the correct one; that under *Fohrman*, all 10 of the agreements involved in this case were invalid and unenforceable; and that the circuit court therefore properly dismissed plaintiff's cause of action in its entirety.

¶ 21    Rule 1.5(e) is part of the Rules of Professional Conduct of 2010, a comprehensive set of rules adopted in July 2009 and effective January 1, 2010, to replace the Illinois Rules of Professional Conduct. Because the Illinois Rules of Professional Conduct of 2010 are a component of the Illinois Supreme Court Rules, we interpret its provisions, including Rule 1.5(e), just as we would other supreme court rules. See, *e.g.*, *People v. Santiago*, 236 Ill. 2d 417, 428 (2010).

¶ 22    The applicable standards are well established. Illinois Supreme Court Rules are construed using the same principles that govern the interpretation of statutes. *People v. Roberts*, 214 Ill. 2d 106, 116 (2005). When construing a rule of the supreme court, a court's primary goal is to ascertain and give effect to the intent of the drafters. The most reliable indicator of that intent is the language used, given its plain and ordinary meaning. In determining the plain meaning of the rule's terms, a court must consider the rule in its entirety, keeping in mind the subject it addresses and the apparent intent of the drafters in enacting it. Courts will also interpret the rule so that no part of it is rendered meaningless or superfluous and will not depart from the plain language of the rule by reading into it exceptions, limitations, or conditions that conflict with the expressed intent. *People v. Dominguez*, 2012 IL 111336, ¶ 16.[4]

¶ 23    Rule 1.5(e) is one of five subsections of Rule 1.5, the portion of the Rules of Professional Conduct governing fees attorneys may charge their clients. Ill. R. Prof'l Conduct (2010) R. 1.5(e) (eff. Jan. 1, 2010). Subsection (a) of Rule 1.5 requires fees and expenses to be reasonable and sets out the factors to be considered in determining the reasonableness of a fee. Ill. R. Prof'l Conduct (2010) R. 1.5(a) (eff. Jan. 1, 2010). Subsection (b) addresses the obligation of attorneys to communicate to their clients the scope of the representation, the basis or rate of the fee and expenses for which the client is responsible, and any subsequent changes in the basis or rate of the fees and expenses. Ill. R. Prof'l Conduct (2010) R. 1.5(b) (eff. Jan. 1, 2010). Subsection (c) authorizes contingent fees, except in certain circumstances, and lays out the procedures that must be followed when an attorney charges a client on a contingent fee basis. Ill. R. Prof'l Conduct (2010) R. 1.5(c) (eff. Jan. 1, 2010). Subsection (d)(2) specifies when contingent fees are not permitted. Ill. R. Prof'l Conduct (2010) R. 1.5(d)(2) (eff. Jan. 1, 2010). Subsection (e), the provision at issue in this case, addresses the division of fees between lawyers who are not in the same firm. Ill. R. Prof'l Conduct (2010) R. 1.5(e) (eff. Jan. 1, 2010).

¶ 24    The language of Rule 1.5(e) is simple and straightforward. It provides:

---

[4]And of course, when this court is called upon to interpret one of its own rules, as we are here, we have an obvious advantage in discerning the drafters' intent. That is particularly true when, as with Rule 1.5(e), the rule is recent enough that most of the present members of the court participated in its adoption.

"(e) A division of a fee between lawyers who are not in the same firm may be made only if:

(1) the division is in proportion to the services performed by each lawyer, or if the primary service performed by one lawyer is the referral of the client to another lawyer and each lawyer assumes joint financial responsibility for the representation;

(2) the client agrees to the arrangement, including the share each lawyer will receive, and the agreement is confirmed in writing; and

(3) the total fee is reasonable." *Id.*

¶ 25    Subsection (e) is the most recent in a series of supreme court rules concerning the propriety of fee sharing among lawyers not in the same firm. Comparing the language of the various rules is helpful in understanding what this court meant to convey when it adopted current Rule 1.5(e).

¶ 26    For much of its history, Illinois prohibited the sharing of fees between lawyers who were not in the same firm where the only service provided by one attorney was the referral of a client to the other. *Corti v. Fleisher*, 93 Ill. App. 3d 517, 531-32 (1981). That changed when this court adopted the Illinois Code of Professional Responsibility (Ill. S. Ct. Code of Prof'l Resp. R. 1-101 *et seq.* (eff. July 1, 1980)) in 1980. *Holstein v. Grossman*, 246 Ill. App. 3d 719, 731-32 (1993). Section 2-107 of the Code of Professional Responsibility removed the outright prohibition against fee sharing based solely on a client referral but made fee-sharing arrangements in such cases permissible only if they satisfied various safeguards designed to protect the client. *Id.* at 733. The rule provided:

"(a) A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm, unless

(1) the client consents in a writing signed by him to employment of the other lawyer, which writing shall fully disclose (a) that a division of fees will be made, (b) the basis upon which the division will be made, including the economic benefit to be received by the other lawyer as a result of the division, and (c) the responsibility to be assumed by the other lawyer for performance of the legal services in question;

(2) the division is made in proportion to the services performed and responsibility assumed by each, except where the primary service performed by one lawyer is the referral of the client to another lawyer and (a) the receiving lawyer fully discloses that the referring lawyer has received or will receive economic benefit from the referral and the extent and basis of such economic benefit and (b) the referring lawyer agrees to assume the same legal responsibility for the performance of the services in question as if he were a partner of the receiving lawyer; and

(3) the total fee of the lawyers does not exceed reasonable compensation for all legal services they rendered to the client.

(4) For purposes of this rule, 'economic benefit' shall include (a) the amount of participation in the fee received with regard to the particular matter; (b) any other form of remuneration passing to the referring lawyer from the receiving lawyer, whether or not with regard to the particular matter; and (c) an established practice

of referrals to and from or from and to the receiving lawyer and the referring lawyer.

(b) This disciplinary rule does not prohibit payment to a former partner or associate pursuant to a separation or retirement agreement." Ill. S. Ct. Code of Prof'l Resp. R. 2-107 (eff. July 1, 1980).

¶ 27    Under subsection (a)(1) of this rule, the validity of an agreement to share fees required the written consent of the client, and the written consent was required to disclose to the client certain specific information, namely, the fact that the fees would be divided, the basis on which the division would be made, and "the responsibility to be assumed by the other lawyer for performance of the legal services in question." Ill. S. Ct. Code of Prof'l Resp. R. 2-107(a)(1) (eff. July 1, 1980). Joint *financial* responsibility for the representation was not included among the mandatory disclosures.

¶ 28    The only place the rule touched on the issue was in a different subsection, (a)(2)(b), which stated that in cases where the primary service performed by one lawyer was the referral of the client to another lawyer, the referring lawyer had to agree to assume "the same legal responsibility for the performance of the services in question as if he were a partner of the receiving lawyer." Ill. S. Ct. Code of Prof'l Resp. R. 2-107(a)(2)(b) (eff. July 1, 1980). The quoted language referred to a different obligation than the responsibility for performance of legal services referenced in subsection (a)(1) of the rule. It described the financial responsibility of the referring lawyer for potential malpractice actions against the receiving lawyer. *In re Storment*, 203 Ill. 2d 378, 392 (2002). But while the rule therefore did broach the subject of joint financial responsibility between the lawyers, the referenced responsibility was an obligation for which agreement had to be obtained from the *referring lawyer*. The terms of subsection (a)(2)(b) itself contained no language requiring express notice to or agreement by the *client* to the lawyers' joint financial responsibility, nor is there any language in that subsection that can be read as requiring that the referring lawyer's agreement to assume potential financial responsibility be incorporated into the written client consent mandated by subsection (a)(1) (Ill. S. Ct. Code of Prof'l Resp. R. 2-207(a)(1) (eff. July 1, 1980)).

¶ 29    In 1990 this court repealed the Illinois Code of Professional Responsibility and adopted the Illinois Rules of Professional Conduct (Ill. R. Prof'l Conduct R. 1.5 (eff. Aug. 1, 1990)) in its place. The Rules of Professional Conduct combined fee-related issues into a single rule, as do the 2010 Rules under examination in this case. The new rule, designated as Rule 1.5, included successor provisions to Rule 2-107 of the Illinois Rules of Professional Conduct. As with Rule 2-107, Rule 1.5 permitted fee sharing between lawyers who are not in the same firm, but only under specified conditions.

¶ 30    Those conditions were broken down into five separate subsections. The relevant subsections stated:

"(f) Except as provided in Rule 1.5(j), a lawyer shall not divide a fee for legal services with another lawyer who is not in the same firm, unless the client consents to employment of the other lawyer by signing a writing which discloses:

(1) that a division of fees will be made;

(2) the basis upon which the division will be made, including the economic benefit to be received by the other lawyer as a result of the division; and

(3) the responsibility to be assumed by the other lawyer for performance of the legal services in question.

(g) A division of fees shall be made in proportion to the services performed and responsibility assumed by each lawyer, except where the primary service performed by one lawyer is the referral of the client to another lawyer and

(1) the receiving lawyer discloses that the referring lawyer has received or will receive economic benefit from the referral and the extent and basis of such economic benefit, and

(2) the referring lawyer agrees to assume the same legal responsibility for the performance of the services in question as would a partner of the receiving lawyer.

(h) The total fee of the lawyers shall be reasonable.

(i) For purposes of Rule 1.5 'economic benefit' shall include:

(1) the amount of participation in the fee received with regard to the particular matter;

(2) any other form of remuneration passing to the referring lawyer from the receiving lawyer, whether or not with regard to the particular matter; and

(3) an established practice of referrals to and from or from and to the receiving lawyer and the referring lawyer.

(j) Notwithstanding Rule 1.5(f), a payment may be made to a lawyer formerly in the firm, pursuant to a separation or retirement agreement." Ill. R. Prof'l Conduct R. 1.5(f)-(j) (eff. Aug. 1, 1990).

¶ 31 As with Rule 2-107(a) of the Illinois Code of Professional Responsibility, Rule 1.5 of the Illinois Rules of Professional Conduct required written client consent to fee-sharing arrangements. The content of those agreements was specified in subsection (f) of Rule 1.5 and included the same three elements mandated by Rule 2-107(a). As the text quoted above indicates, the document was required to disclose that the fees would be divided with another lawyer, the basis upon which that division would be made, and the responsibility to be assumed by the other lawyer for performance of the legal services in question. Ill. R. Prof'l Conduct R. 1.5(f) (eff. Aug. 1, 1990). Subsection (f) of Rule 1.5 made no reference to joint *financial* responsibility, much less make it a requirement of the client's written consent. As with Rule 2-107, Rule 1.5 touched on the subject only in a different subsection, (g)(2), which stated that the *referring lawyer* must agree to assume "the same legal responsibility for the performance of the services in question as would a partner of the receiving lawyer." Ill. R. Prof'l Conduct R. 1.5(g)(2) (eff. Aug. 1, 1990). As was the case under Rule 2-107, nothing in Rule 1.5 required that obligation to be included in the written consent signed by the *client*.

¶ 32 When this court repealed the Illinois Rules of Professional Conduct in 2010 and replaced them with the Illinois Rules of Professional Conduct of 2010, which remain in effect today, it again continued to permit division of fees between lawyers who are not in the same firm provided that certain conditions are met. The applicable conditions, however, have been reduced to three. First, the division must be in proportion to the services each attorney actually rendered or, in cases where the primary service provided by one lawyer was the referral of the client to another lawyer, both lawyers must assume joint financial responsibility for the representation as a whole. Ill. R. Prof'l Conduct (2010) R. 1.5(e)(1) (eff. Jan. 1, 2010). Second,

the client must agree in writing to the arrangement, including the share each attorney is to receive. Ill. R. Prof'l Conduct (2010) R. 1.5(e)(2) (eff. Jan. 1, 2010). Third, the total fee charged to the client must be "reasonable" (Ill. R. Prof'l Conduct (2010) R. 1.5(e)(3) (eff. Jan. 1, 2010)), a determination governed by factors set out in subsection (a) of Rule 1.5 (Ill. R. Prof'l Conduct (2010) R. 1.5(a) (eff. Jan. 1, 2010)). Ill. R. Prof'l Conduct (2010) R. 1.5, Comment, Division of Fee (eff. Jan. 1, 2010).

¶ 33        The reference to "joint financial responsibility" in the first of these three conditions "entails financial responsibility for the representation as if the lawyers were associated in a general partnership." It is the same as the "legal responsibility" referenced in Rule 2-107(a)(2)(b) of the Illinois Code of Professional Responsibility (eff. July 1, 1980) and Rule 1.5(g)(2) of the previous Illinois Rules of Professional Conduct (eff. Aug. 1, 1990). See Ill. R. Prof'l Conduct (2010) R. 1.5, Comment, Division of Fee (citing *In re Storment*, 203 Ill. 2d 378 (2002)).

¶ 34        Defendant's appeal in this case turns on the proposition that under the current version of our fee-sharing rule, the existence of an agreement between the referring and receiving lawyers to assume joint financial responsibility is something that must be expressly included in the attorneys' agreements with their clients. History and the language of the rule do not support defendant's position. As with the prior versions of our fee-sharing rules, the current joint financial responsibility requirement is included in a different subsection of the rule than the provision addressing what the client must agree to. Consistent with its predecessors, the client consent provision, now set forth in Rule 1.5(e)(2), makes no mention of the attorneys' assumption of joint financial responsibility. Indeed, in contrast to the prior versions of the rule, it no longer even requires an explanation to the client of the attorneys' respective responsibilities with respect to the legal services to be rendered on the client's behalf or the basis on which the fees will be divided. Now all the written consent must include is that the client has agreed to the "arrangement," *i.e.*, the referral of the case and the division of fees between the referring and receiving lawyers, including how much each lawyer will receive. Ill. R. Prof'l Conduct (2010) R. 1.5(e)(2) (eff. Jan. 1, 2010). The 10 client retainer agreements in this case contained considerably more information than that.

¶ 35        Because Rule 1.5(e)(2) does not, itself, directly address the joint financial responsibility lawyers are required to assume if they wish to divide fees under a referral agreement, defendant can prevail only if the client consent requirement in Rule 1.5(e)(2) can be read as incorporating the joint responsibility obligation, which is set forth in Rule 1.5(e)(1). We reject that construction. Rule 1.5(e)(2) does not incorporate Rule 1.5(e)(1). To the contrary, now, as before, each of Rule 1.5's three subsections constitutes a separate condition that must be satisfied in order for a fee-sharing agreement to be enforceable. They are in the nature of a checklist in which each of the enumerated items must be crossed off before moving to the next, and all must be checked off before the fees may be divided. First, when the primary service performed by one lawyer is the referral of the client to another, both lawyers must assume joint financial responsibility for the representation. Second, the client has to agree to the referral and fee-sharing arrangement, including how much each lawyer will get, and the client's agreement must be confirmed in writing. Third and finally, the total fee charged to the client must be reasonable. The steps proceed in a manner that is both chronological and logical.

¶ 36    To hold otherwise would require a finding that when we adopted the current version of the fee-sharing rule, we intended its provisions to operate differently than its predecessors and to expand the required content of written client consent to fee-sharing arrangements in situations where the primary service performed by one lawyer is the referral of the client to the other. As we have already described, however, the current rule actually *reduced* the conditions which must be satisfied in order for fees to be divided between lawyers who are not in the same firm. In light of that change, which is apparent in the text of the rule, and absent any supporting evidence in either the rule itself or elsewhere, it is difficult to see what possible basis we would have for now holding that the rule should be read more expansively to include the additional requirement on which defendant's position depends.

¶ 37    In urging a contrary interpretation, defendant, like the trial court, looks for support in *Donald W. Fohrman & Associates, Ltd. v. Mark D. Alberts, P.C.*, 2014 IL App (1st) 123351. That decision, however, will not carry the analytical weight defendant has asked it to bear. The appellate court in *Fohrman* did agree that a fee-sharing agreement that failed to include a provision advising the client that the attorneys had assumed joint financial responsibility failed to strictly comply with Rule 1.5(e) and was therefore unenforceable. The agreements in that case, however, suffered from numerous deficiencies, and the attorney seeking to enforce them did not dispute that they failed to conform to Rule 1.5(e). *Id.* ¶ 36. In the face of that concession, the appellate court refrained from undertaking any analysis whatever as to whether Rule 1.5(e) actually requires the agreement from the client to include a provision regarding the attorneys' acceptance of joint financial responsibility. It simply took such a requirement as a given. Its focus, instead, was on whether the fee-sharing agreements could be enforced notwithstanding the failure to strictly comply with Rule 1.5(e) (*id.* ¶¶ 37-56), a point not contested here. Defendant's reliance on *Fohrman* is therefore unavailing.

¶ 38    Rule 1.5 and its predecessor provisions have required disclosure of fee-sharing arrangements in order to preserve a client's right to be represented by the attorney of his or her choosing. *Canel & Hale, Ltd. v. Tobin*, 304 Ill. App. 3d 906, 915 (1999). That right was fully protected by the joint client retainer agreements executed in this case. The rule's joint financial responsibility requirement, as the appellate court in this case correctly recognized, is directed to protection of a different value, insuring that if one of the lawyers involved in the referral is sued for malpractice, the other will also be liable as would be lawyers in a general partnership. *Ferris, Thompson, & Zweig, Ltd. v. Esposito*, 2016 IL App (2d) 151148, ¶ 14. This protection exists whether it is included in the notice to the client or not. *Id.* Defendant has cited no authority to the contrary. Its inclusion in the notice and client consent is therefore not necessary in order to give effect to the attorneys' joint financial responsibility.

¶ 39    We note, moreover, that if the clients in this case had retained a single law firm with multiple partners, our Rules of Professional Conduct would not have required the retainer agreements to expressly notify the clients, in writing, as a precondition to enforcement of the fee agreement, that the partners would be subject to liability along with the attorney providing the actual legal services if that attorney committed malpractice. Defendant has not explained, and we do not see, why the situation should be any different where, as here, the lawyers involved have agreed to assume the very same joint financial responsibility but simply do not practice in the same firm. As we have pointed out, the clients are protected either way.

¶ 40    If this court had intended to require that the assumption of joint financial responsibility by the attorneys be included among the items for which the client is required to give express written consent, we could readily have done so. Indiana law provides an example of such an approach. In a now-superseded counterpart to Rule 1.5(e), the Indiana Supreme Court included written client consent in the initial provision dealing with joint responsibility. The rule provided:

> "A division of fee between lawyers who are not in the same firm may be made only if:
>
> (1) the division is in proportion to the services performed by each lawyer or, *by written agreement with the client*, each lawyer assumes joint responsibility for the representation;
>
> (2) the client is advised of and does not object to the participation of all the lawyers involved; and
>
> (3) the total fee is reasonable." (Emphasis added.) *In re Hailey*, 792 N.E.2d 851, 862 (Ind. 2003).

Under the Indiana rule, the assumption of joint responsibility by the lawyers was expressly, directly, and unambiguously linked to a requirement of written client consent. Our version of the rule, by contrast, contains no such language. To read it as if it did would require us to depart from the rule's plain language and insert a condition we did not express when the rule was adopted. Under basic rules of construction, that is something we may not do. See *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 56.

¶ 41    We therefore agree with plaintiff that the fee-sharing provisions of the 10 joint client retainer agreements at issue in this case were not fatally defective under Rule 1.5(e) of the Illinois Rules of Professional Conduct of 2010 simply because they did not contain language specifically stating that plaintiff and defendant had agreed to assume joint financial responsibility for the representation. The circuit court therefore erred as a matter of law when it dismissed plaintiff's second amended complaint on that basis, and its judgment was properly reversed by the appellate court. In light of this conclusion, we need not address plaintiff's additional contentions that certain of the retainer agreements were not subject to the current version of Rule 1.5(e) because they were signed before the Rules of Professional Conduct took effect or that defendant should be estopped from contesting the validity of the agreements under Rule 1.5(e) based upon his failure to pursue the question in an earlier appeal.

¶ 42                                    CONCLUSION

¶ 43    For the foregoing reasons, the judgment of the appellate court is affirmed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 44    Appellate court judgment affirmed.

¶ 45    Cause remanded.