# Illinois Official Reports

## Appellate Court

<div style="border:1px solid">

### *People v. Deroo*, 2020 IL App (3d) 170163

</div>

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RYAN JAMES DEROO, Defendant-Appellant. |
| District & No. | Third District<br>No. 3-17-0163 |
| Filed | May 20, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Rock Island County, No. 16-CF-229; the Hon. Frank R. Fuhr, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd and Peter A. Carusona, of State Appellate Defender's Office, of Ottawa (Terry D. Slaw, of Alan H. Shifrin & Associates, LLC, of Rolling Meadows, of counsel), for appellant.<br><br>Patricia Castro, State's Attorney, of Rock Island (Patrick Delfino, Thomas D. Arado, and Stephanie L. Raymond, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

JUSTICE CARTER delivered the judgment of the court, with opinion.
Justice Schmidt concurred in the judgment and opinion.
Justice Holdridge concurred in part and dissented in part, with opinion.


**OPINION**

¶ 1   After a jury trial, defendant, Ryan James Deroo, was found guilty of one count of aggravated driving under the influence of alcohol (aggravated DUI) (625 ILCS 5/11-501(a)(2), (d)(2)(D) (West 2016)), one count of aggravated driving with a blood alcohol concentration of 0.08 or greater (aggravated DUI BAC) (*id.* § 11-501(a)(1), (d)(2)(D)), and one count of aggravated driving while license revoked (aggravated DWLR) (*id.* § 6-303(d)). Following a sentencing hearing, defendant was sentenced to concurrent terms of nine years in prison for aggravated DUI and three years in prison for aggravated DWLR.[1] Defendant appeals his convictions, arguing that (1) the trial court erred in granting a directed finding for the State on defendant's motion to suppress evidence at the conclusion of defendant's case-in-chief, (2) defendant was not proven guilty of the offenses beyond a reasonable doubt, and (3) the trial court erred in admitting the blood test results at defendant's trial. We affirm the trial court's judgment.

¶ 2                                 I. BACKGROUND

¶ 3   On March 13, 2016, at about 6 or 7 p.m., defendant was allegedly operating a motor vehicle on Turkey Hollow Road in Rock Island County, Illinois. While going around a curve, defendant lost control of the vehicle, went off the road, hit a farm access road, flipped his vehicle over several times, and crashed. It was not foggy or rainy at the time, although it was dark. An oncoming motorist, Carrie Olson, saw the accident occur and reported that the driver of the vehicle appeared to be going too fast around the curve. Olson turned her vehicle to point her headlights at the crashed vehicle, and Olson's sister-in-law, who was with her at the time, called 911. The driver of the vehicle—a male subject—was lying over the front driver's side door and was hanging partially out the window. Olson maintained a constant view of the crashed vehicle until emergency personnel arrived but did not approach the vehicle. While they were waiting for the ambulance, Olson's sister-in-law went over to the crashed vehicle to see if the person hanging out of the window was still alive. The ambulance arrived, and one of the paramedics and some of the other first responders removed defendant from the driver's door area. That paramedic recognized defendant from a prior incident and knew defendant's grandmother, who was the owner of the vehicle. Neither the paramedic nor the witness to the accident (Olson) saw anyone else in defendant's vehicle. Defendant was taken to the hospital for treatment. He suffered a facial fracture and cuts to his face.

¶ 4   In the emergency room at the hospital, defendant's blood was drawn for the purpose of medical treatment. The blood test results showed that defendant's blood alcohol level was

---

[1]In sentencing defendant, the trial court found that the aggravated DUI charge and the aggravated DUI BAC charge merged and imposed a nine-year sentence on the merged charge. The written sentencing order, however, indicates that the nine-year sentence was imposed on the aggravated DUI charge. A sentence was also imposed on the aggravated DWLR charge as indicated above.

elevated and was over the legal limit. The treating physician told an officer who had reported to the hospital about defendant's blood alcohol level. When that officer, Rock Island County Sheriff's Deputy Claire Woodthorp, asked defendant questions about the accident, defendant would look away and would either not answer the question or would state that he did not remember. When Woodthorp asked defendant if he knew why he was at the hospital, defendant stated that it was because he had totaled his car. Woodthorp asked defendant if he would consent to a police blood draw, but defendant laughed and refused. Woodthorp contacted her supervisor about getting a search warrant for defendant's blood, but her supervisor was told by the search warrant judge to just subpoena the hospital records. Four of the people who came into contact with defendant that night—the paramedic, the doctor, the nurse, and Deputy Woodthorp—were all of the opinion that defendant was under the influence of alcohol. Defendant was later transferred to another hospital for additional treatment.

¶ 5    The vehicle involved in the crash belonged to defendant's grandmother, Kathleen McChesney, who defendant was living with at the time of the accident. During the afternoon of the crash, McChesney saw defendant drinking what she believed was alcohol out in the garage with two or three of his friends. In addition, during the evening of that same day, McChesney saw defendant leave the residence in McChesney's vehicle. Defendant was seated in the driver's seat at the time and was the only person in the vehicle.

¶ 6    On March 22, 2016, a three-count information, which was later amended, was filed charging defendant with the three offenses listed above. During the pretrial proceedings, defendant filed a motion to suppress the hospital blood test results. A hearing was held on the motion to suppress in September 2016. The only witness to testify at the hearing was Deputy Woodthorp, who was called to testify by defendant. In addition to some of the information provided above, Woodthorp testified that she initially reported to the accident scene, but by the time she got there, defendant had already been removed from the vehicle and taken to the hospital. Woodthorp talked to Deputy Herbert, the first police officer to arrive at the accident scene, and was told that defendant had been driving the vehicle, that defendant was partially hanging out of the driver's side window of the vehicle when Herbert arrived, that defendant was the only person in the vehicle, that defendant was mumbling his words, that defendant's facial area smelled very strongly of alcohol, and that an oncoming motorist had seen the accident happen. After talking to that motorist about what she had observed, Woodthorp went to the hospital.

¶ 7    At the hospital, Woodthorp spoke to defendant in the emergency room for 15 or 20 minutes as medical personnel treated defendant. Woodthorp noticed that defendant's speech was very slow and slurred and that defendant's facial area smelled very strongly of alcohol. For the most part, defendant was uncooperative and either refused to answer or ignored Woodthorp's questions, except for telling Woodthorp that he was at the hospital because he had totaled his car and that Woodthorp should let defendant's grandmother know that defendant was in the hospital.

¶ 8    Woodthorp issued defendant a DUI citation and a warning to motorist form at the hospital, and defendant refused to submit to a police blood draw. Although Woodthorp only met with defendant for 15 or 20 minutes, she was at the hospital for about two hours and was seated at a desk in a hallway down from where defendant was located and was writing her police report. Woodthorp never placed defendant under arrest, handcuffed defendant, or drew her weapon, and, according to Woodthorp, defendant was free to leave (other than whatever rules the

hospital had about defendant leaving). Eventually, a doctor at the hospital told Woodthorp that defendant's blood alcohol results were over the legal limit. Woodthorp stated on the witness stand that she did not approach the doctor and ask the doctor for that information but also commented that the staff at the hospital would provide the police with blood alcohol results. Woodthorp stated further that defendant's blood was drawn for the purpose of medical treatment, that she did not direct or order the hospital staff to draw defendant's blood, that no one else from the sheriff's department directed or ordered the hospital staff to draw defendant's blood, and that she took no part in the hospital staff doing so.

¶ 9    After Woodthorp's testimony was completed at the hearing on the motion to suppress, the defendant rested. The State moved for a directed finding. When the attorneys had finished making their arguments on the matter, the trial court granted the State's motion for a directed finding and denied defendant's motion to suppress. As part of its ruling, the trial court found that defendant was not under arrest when he was at the hospital, that Deputy Woodthorp had probable cause to arrest defendant if she wanted to do so, and that Illinois statute provided a procedure pursuant to which the State could obtain medical blood draws and evidence from treating physicians and nurses regarding the condition of patients involved in DUI prosecutions.

¶ 10    In December 2016, defendant's case proceeded to a jury trial. The trial took two days to complete. During its case-in-chief, the State called numerous witnesses to testify, including Carrie Olson, the oncoming motorist who saw the accident occur; Deputy Woodthorp; Bruce Retherford, the paramedic at the scene who recognized defendant; Jennifer Wilkinson, one of defendant's treating nurses at the hospital; Dr. Douglas Gaither, defendant's treating physician at the hospital; and John Wetstein, an expert witness who converted defendant's blood serum alcohol result to its whole blood equivalent. Much of the evidence that was presented at the trial has already been set forth above.[2]

¶ 11    In addition to that evidence, the other evidence presented at the trial relevant to the issues raised in this appeal can be summarized as follows. Deputy Woodthorp identified defendant in court as the person that she had talked to at the hospital about the crash. Bruce Retherford, the paramedic who was at the scene of the crash, identified defendant in court as the person who was hanging out of the front driver's side window of the vehicle after the crash occurred. While treating defendant and transporting defendant to the hospital, the only substances that Retherford had placed into defendant's body were intravenous (IV) fluids that contained saline and would not have affected defendant's ethanol level.

¶ 12    Jennifer Wilkinson, one of the nurses who treated defendant in the emergency room, testified that defendant was rude, disrespectful, and uncooperative at times at the hospital. When Wilkinson asked defendant what had happened, defendant's response did not make sense. Defendant told Wilkinson that he had been driving a little sport utility vehicle, that his family was okay, and that he did not remember anything else. Wilkinson asked defendant if he had been drinking, and defendant responded that he had but that he did not know how much

_____

[2]Deputy Woodthorp's testimony at trial was very similar to her testimony at the hearing on the motion to suppress. At trial, however, Woodthorp did not testify about her conversation with Deputy Herbert at the scene. Rather, Woodthorp testified at trial that she was ordered by her superior to go to the hospital to meet with the driver of the vehicle, whose name was listed in her call notes as "Ryan De[r]oo."

alcohol he had consumed. According to Wilkinson, defendant's blood was drawn in the emergency room as part of his emergency medical treatment, and Dr. Gaither ordered that defendant's blood be tested for alcohol. Wilkinson did not remember if she had drawn defendant's blood or if the phlebotomist from the lab had come into the emergency room and done so.

¶ 13        During her testimony, Wilkinson described the procedure that was followed in drawing a trauma patient's blood in the hospital. According to Wilkinson, pursuant to hospital protocol, all trauma patients had blood drawn when they entered the emergency room, usually when they first came in. To prepare for a blood draw, the patient's skin would be cleaned with a nonalcoholic substance. When the blood was drawn, it would be placed into a blood tube, and the tube would be labeled at the patient's bedside with the patient's name, date of birth, and medical record number. The patient's name and date of birth would then be verified with the patient verbally, if the patient was able, and with the patient's armband. After the blood tube was labeled and verified, it would be taken to the main lab on the ground floor of the hospital, the lab that was routinely used by the hospital. Wilkinson would not take the blood tube to the lab personally. The results of the blood test would later appear on the hospital computer on the patient's medical record. The hospital used computer charting, so all of the patients' charts were on the computer. On the top of a patient's computer chart was the patient's name, date of birth, and medical record number. It was the regular practice of the hospital to make and keep a record of the results of any blood analysis that was done.

¶ 14        Wilkinson saw defendant's ethanol result from the blood test come through the computer in the instant case. Defendant's ethanol (another word for alcohol according to Wilkinson and Dr. Gaither) level was 247. To Wilkinson's knowledge, neither she nor anyone else had administered any medication to defendant before his blood was drawn, and neither she nor anyone else had given any treatment to defendant that would have affected his ethanol level.

¶ 15        Dr. Douglas Gaither, the doctor who treated defendant in the emergency room after the crash, testified about his education and experience and was qualified by the trial court as an expert in emergency medicine. Before Gaither's substantive testimony began, defense counsel asked that an offer of proof be made outside the presence of the jury as to certain aspects of the blood test results. During that offer of proof, Gaither testified, among other things, that there was no chain of custody for the blood test results because of the need to get results rapidly so that treatment decisions could be made. Gaither confirmed, however, that the blood alcohol result was a complete and reliable result upon which he could, and did, rely. Gaither stated further in the offer of proof that he ordered that defendant's blood be tested for alcohol, and that the test was not ordered by any member of law enforcement. At the conclusion of the offer of proof, defense counsel renewed his motion to suppress based upon the lack of a chain of custody. The State argued that it did not have to establish a chain of custody under the circumstances of the present case and that a sufficient foundation had been presented pursuant to the statute for the blood test results to be admitted. After considering the offer of proof and the arguments of the attorneys, the trial court overruled defendant's objection to the admission of the blood test results. In so doing, the trial court indicated that, based upon the statute and the case law, the trial court believed that the chain of custody was irrelevant.

¶ 16        After the jury was brought back in, Gaither's substantive testimony was presented. In addition to some of the evidence that has been set forth previously, Gaither testified that, when he first made contact with defendant that evening in the emergency room, defendant had

already had some IVs placed into him. The IVs contained saline, which would not have affected defendant's blood alcohol level. While Gaither was treating defendant, he noticed that defendant's speech was slurred, which based upon the examination and testing that had been done, Gaither opined was caused by defendant's alcohol consumption (Gaither was able to rule out other causes). Gaither asked defendant if he had been drinking, and defendant stated that he had. Defendant's blood was drawn as part of defendant's emergency medical treatment and pursuant to hospital protocol for trauma patients, and Gaither ordered that defendant's blood be tested for alcohol. Gaither did not know who actually drew defendant's blood in the emergency room. As far as Gaither was aware, no member of law enforcement ordered the hospital to test defendant's blood for alcohol.

¶ 17 According to Gaither, after defendant's blood was drawn, it was tested by the lab at the hospital to determine the blood serum alcohol level. The lab was the same one that the hospital always used and, to Gaither's knowledge, was certified to conduct blood analysis. Gaither did not know who tested defendant's blood in the lab. The results of the blood test came back over the computer screen under defendant's name, and Gaither relied on those results in treating defendant. According to Gaither, it was the regular practice of the hospital to make and keep a record of the ethanol result in a patient's blood if a blood test was ordered by a physician. In this particular case, defendant's blood ethanol level was 247 milligrams per deciliter, which when converted to grams per deciliter was 0.247.

¶ 18 During his testimony, Gaither identified State's exhibit No. 1 as a fair and accurate copy of defendant's hospital lab results from the date of the accident. Gaither knew that the results were for the defendant because the top of the results listed defendant's name and date of birth. The results also listed Gaither's name as the doctor, the date, the specimen collection and type, and the results of the tests conducted. The results were prepared in the regular course of business at the hospital. On the State's motion, the blood test results were admitted into evidence over the previous objection of defendant and then published to the jury. The blood test results also provided a reference range for blood alcohol level. The range of 200 to 250 milligrams per deciliter (the range in this particular case) was indicative of a severe degree of alcohol poisoning. Many patients with a blood alcohol level in that range would not be awake, although they could be awoken easily. At the next range higher—greater than 250 milligrams per deciliter—most people would be in a coma. Gaither's description of the applicable reference range was consistent with his observations of defendant in the present case.

¶ 19 John Wetstein, a toxicology training coordinator for the Illinois State Police Division of Forensic Services, testified for the State as an expert witness in forensic toxicology. Wetstein described for the jury the process of converting a blood serum alcohol concentration (the hospital blood test result) to a whole blood alcohol concentration and why such a process was required. By performing the necessary conversion in the present case, Wetstein determined that defendant's whole blood alcohol concentration was 0.209, which was more than twice the amount of the state statutory definition of DUI of 0.08 or greater.

¶ 20 After the State rested its case-in-chief, defendant made a motion for a directed verdict and also moved to have the trial court reconsider its ruling on the motion to suppress. Following some brief argument, the trial court denied both motions.

¶ 21 Defendant testified in his own behalf. During his testimony, defendant admitted that he was intoxicated at the time of the accident but claimed that he was not driving the vehicle at the time and that a person introduced to him as "T" was driving. According to defendant, he

would not recognize "T" if he saw him again. Defendant also testified that he did not remember going to the hospital or talking to nurses or paramedics or to a police officer.

¶ 22 At the conclusion of the trial, the jury found defendant guilty of all three charges. Defendant filed a motion for judgment notwithstanding the verdict or for new trial, which the trial court denied. Following a sentencing hearing, defendant was sentenced to concurrent terms of nine years in prison for the offense of aggravated DUI[3] and three years in prison for the offense of aggravated DWLR. Defendant appealed.

¶ 23                                    II. ANALYSIS
¶ 24                           A. Motion to Suppress Evidence
¶ 25 As his first point of contention on appeal, defendant argues, although somewhat implicitly, that the trial court erred in granting the State's motion for a directed finding at the hearing on defendant's motion to suppress at the conclusion of defendant's case-in-chief. Defendant asserts that the State's motion for a directed finding should not have been granted because the evidence defendant presented at the hearing was sufficient to establish a *prima facie* case for suppression. More specifically, defendant contends that the evidence he presented showed that (1) a search took place in that defendant's blood was drawn and (2) the search was illegal and in violation of the fourth amendment because it was done without a search warrant, exigent circumstances, or consent. Although defendant acknowledges that his blood was drawn by members of the hospital staff, who were private persons, he contends that at the time of the blood draw, the hospital staff members were acting as agents of the State as indicated by such facts as the presence of the police officer at the hospital for a long period of time and the disclosure of the blood test results by the hospital staff to the police officer despite confidentiality laws forbidding disclosure. For all of the reasons stated, defendant asks that we reverse the trial court's grant of the State's motion for a directed finding, that we vacate defendant's aggravated DUI and aggravated DUI BAC convictions, and that we remand this case for further hearing on defendant's motion to suppress.

¶ 26 The State argues that the trial court's ruling was proper and should be upheld. The State concedes that a search took place—the hospital blood draw—but asserts that defendant failed to establish a *prima facie* case for suppression, nevertheless, because defendant failed to establish that the hospital blood draw (the search) violated the fourth amendment. In support of that assertion, the State contends that defendant failed to show that the hospital staff members were acting as agents of the State at the time that they drew defendant's blood. In reply to some of defendant's more specific claims, the State asserts that the fact that the police officer was present at the hospital is not sufficient to establish that the hospital staff members were acting as agents of the State, that any discussion of a lack of exigent circumstances is irrelevant in the context of this case where defendant's blood was drawn by private persons, and that the applicable statute allowed the hospital staff members to disclose the hospital blood test results to the police without violating confidentiality laws. For all the reasons set forth, the

---

[3]As noted previously, the trial court found that the aggravated DUI and the aggravated DUI BAC charges merged and imposed the nine-year sentence on the merged charge. The sentencing order, however, indicates that the nine-year sentence was imposed on the aggravated DUI charge. A sentence was also imposed on the aggravated DWLR charge as indicated above.

State asks that we affirm the trial court's grant of the State's motion for directed finding on defendant's motion to suppress evidence.

¶ 27    A reviewing court applies a two-part standard of review to a trial court's ruling on a motion to suppress evidence. *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *People v. Brooks*, 2017 IL 121413, ¶ 21; *People v. Gaytan*, 2015 IL 116223, ¶ 18. The trial court's findings of fact are given great deference and will not be reversed on appeal unless they are against the manifest weight of the evidence. *People v. Hackett*, 2012 IL 111781, ¶ 18; *People v. Sorenson*, 196 Ill. 2d 425, 431 (2001). However, as to the trial court's ultimate legal ruling of whether suppression is warranted, *de novo* review applies. *Hackett*, 2012 IL 111781, ¶ 18; *Sorenson*, 196 Ill. 2d at 431. The reviewing court is free to make its own assessment of the legal issues, based upon the findings of fact, and to draw its own conclusions. *Hackett*, 2012 IL 111781, ¶ 18.

¶ 28    A defendant who files a motion to suppress evidence bears the burden of proof at a hearing on the motion. 725 ILCS 5/114-12(b) (West 2016); *Brooks*, 2017 IL 121413, ¶ 22. The defendant must establish a *prima facie* case for suppression by showing that the evidence was obtained as a result of an illegal search or seizure. *Brooks*, 2017 IL 121413, ¶ 22. In other words, the defendant must establish the factual and legal bases for granting the motion to suppress. See *id.* Where the basis for a motion to suppress is an allegedly illegal search, the defendant must establish that there was a search and that the search was illegal. *Id.* If a defendant establishes a *prima facie* case, the burden then shifts to the State to present evidence to counter the defendant's *prima facie* case. *Id.* The ultimate burden of proof at the suppression hearing, however, remains on the defendant. *Id.*

¶ 29    The fourth amendment to the United States Constitution and article I, section 6, of the Illinois Constitution protect the right of the people to be free from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6; *Gaytan*, 2015 IL 116223, ¶ 20. A blood draw is a search within the meaning of the fourth amendment. *Brooks*, 2017 IL 121413, ¶ 27. A search conducted without a search warrant is considered *per se* unreasonable under the fourth amendment unless it falls within one of the limited number of exceptions to the search warrant requirement. *Id.*

¶ 30    The constitutional protection against unreasonable searches and seizures, however, does not apply to searches or seizures conducted by private individuals. *Id.* ¶ 28. When a private individual performs a search independently of the police, the fourth amendment is not implicated because state action is not present. See *id.* To establish that a private search should be attributed to the government, as defendant asserts in the present case, the defendant must show that, in light of all the circumstances, the private individual who conducted the search was acting as an agent or instrumentality of the State when doing so. *Id.* ¶ 30.

¶ 31    After having reviewed the record in the present case, we find that defendant failed in his burden to establish that, when the hospital drew his blood, it was acting as an agent or instrumentality of the State. See *id.* ¶¶ 22, 30. The evidence presented at the suppression hearing clearly established that defendant's blood was drawn by the hospital for the purpose of his medical treatment. Although Deputy Woodthorp was at the hospital, she did not ask members of the hospital staff to draw defendant's blood on her behalf. In addition, defendant did not call anyone from the hospital to testify at the hearing and there was no evidence presented that the individual who drew defendant's blood did so at the behest, or under the influence, of the police. Thus, contrary to defendant's assertion on appeal, there is no indication

that the hospital was acting as an agent of the State at the time of the blood draw. That conclusion is further bolstered when we consider the evidence that was presented at defendant's jury trial where nurse Wilkinson testified that defendant's blood was drawn as part of defendant's emergency medical treatment and that Dr. Gaither had ordered the blood be tested for alcohol and where Dr. Gaither provided similar testimony about what had occurred. See *People v. Caballero*, 102 Ill. 2d 23, 33-36 (1984) (indicating that the reviewing court may consider the evidence presented at trial in affirming the denial of a motion to suppress). Because defendant failed to establish that the search that took place in this case was illegal, the trial court properly denied defendant's motion to suppress evidence. See *Brooks*, 2017 IL 121413, ¶¶ 30, 35.

¶ 32                          B. Proof Beyond a Reasonable Doubt

¶ 33       As his next point of contention on appeal, defendant argues that he was not proven guilty beyond a reasonable doubt of the offenses in question. In support of that argument, defendant asserts first that the State failed to prove at trial all three of the charges against him because the State failed to establish that defendant was the person who was operating or in actual physical control of the motor vehicle at the time of the accident. Defendant claims that the evidence was insufficient to prove the driving element of all three offenses because not a single State witness testified at trial that defendant was the person who was driving the vehicle at the time of the crash. Rather, defendant maintains, the only evidence the State presented to show that defendant was driving was the statement that defendant had made to Deputy Woodthorp at the hospital that he had totaled the car—a statement, which alone, according to defendant, was insufficient to establish beyond a reasonable doubt that defendant was the driver of the vehicle. In making that assertion, defendant points out that, contrary to any representation by the State, defendant was not found in the driver's seat of the vehicle after the accident occurred. Defendant asserts second in support of his argument on this issue that the State also failed to prove, for the purpose of the aggravated DUI BAC charge, that defendant's blood alcohol concentration (referred to at times hereinafter as BAC) was 0.08 or greater at the time of the accident. According to defendant, the State's proof as to the blood alcohol level was lacking because the State failed to present any evidence to establish the reliability and trustworthiness of the hospital blood test result as was necessary to adequately prove that defendant's BAC was 0.08 or greater. Most notably, defendant contends, comparing this case to the proof of drug content in criminal drug cases, that the State failed to present any evidence to show who drew defendant's blood, what the hospital's protocol was for drawing blood in the emergency room, how defendant's blood sample was delivered to the lab, what the lab's protocol was for testing a blood draw, who tested the blood in the lab, what the qualifications were of the person who tested the blood, what tests were performed on defendant's blood, whether any equipment used to test defendant's blood was working properly, the reliability of any testing procedures, and the chain of custody for the blood sample. For all the reasons set forth, defendant asks that we reverse his conviction for aggravated DUI BAC outright or, alternatively, that we reverse all three of his convictions and remand this case for a new trial.[4]

---

[4]We take no position on whether the relief that defendant requests on appeal as to the second issue would be the appropriate remedy for the errors that defendant claims allegedly occurred in the trial court.

¶ 34 The State argues that the evidence was sufficient to prove defendant guilty of all three offenses. As to the driving element, the State asserts that defendant's statement to Deputy Woodthorp about totaling the car was not the only evidence the State presented and that the testimony of the State's witnesses—Olson, Retherford, Woodthorp, and McChesney—was sufficient to prove that defendant was the driver of the vehicle at the time the crash occurred. With regard to the BAC element, the State asserts that it presented sufficient evidence for defendant's blood test results to be admitted under section 11-501.4 of the Illinois Vehicle Code (625 ILCS 5/11-501.4 (West 2016)) and that those results, as converted to a whole blood equivalent, adequately established that defendant's BAC was 0.08 or greater at the time of the accident. In making that assertion, the State contends that the chain of custody and reliability requirements cited by defendant do not apply to blood test results that are admissible under section 11-501.4. For that reason and for all the other reasons set forth, the State asks that we affirm defendant's convictions.

¶ 35 Pursuant to the *Collins* standard (*People v. Collins*, 106 Ill. 2d 237, 261 (1985)), a reviewing court faced with a challenge to the sufficiency of the evidence must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt. *People v. Jackson*, 232 Ill. 2d 246, 280 (2009). In applying the *Collins* standard, the reviewing court must allow all reasonable inferences from the record in favor of the prosecution. *People v. Bush*, 214 Ill. 2d 318, 326 (2005). The reviewing court will not retry the defendant. *People v. Austin M.*, 2012 IL 111194, ¶ 107. Determinations of witness credibility, the weight to be given testimony, and the reasonable inferences to be drawn from the evidence are responsibilities of the trier of fact, not the reviewing court. *People v. Jimerson*, 127 Ill. 2d 12, 43 (1989). Thus, the *Collins* standard of review fully recognizes that it is the trier of fact's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. See *Jackson*, 232 Ill. 2d at 281. That same standard of review is applied by the reviewing court regardless of whether the evidence is direct or circumstantial or whether defendant received a bench or a jury trial, and circumstantial evidence meeting that standard is sufficient to sustain a criminal conviction. *Id.*; *People v. Kotlarz*, 193 Ill. 2d 272, 298 (2000). In applying the *Collins* standard, a reviewing court will not reverse a conviction unless the evidence is so improbable, unsatisfactory, or inconclusive that it leaves a reasonable doubt of the defendant's guilt. *Austin M.*, 2012 IL 111194, ¶ 107.

¶ 36 Upon reviewing the record in the present case, we find that the evidence was sufficient to prove defendant guilty of the alleged offenses. First, contrary to defendant's assertion on appeal, the evidence presented at defendant's trial, viewed in the light most favorable to the State, was sufficient to prove defendant was driving the vehicle at the time of the accident. The witness to the accident saw both the accident and the aftermath and stated that the driver of the vehicle was hanging out of the driver's side window after the accident occurred. The accident witness watched as the paramedics loaded the driver onto a gurney and stated that she saw no one else in the vehicle. One of the paramedics who responded to the accident removed defendant from the driver's door area of the vehicle and recognized defendant from a prior incident. That paramedic also saw no one else in the vehicle and identified defendant in court as the person he removed from the front driver's side door area of the vehicle. In addition, when Deputy Woodthorp asked defendant if he knew why he was at the hospital, defendant stated that he had totaled his car. Woodthorp also identified defendant in court as the person

she spoke to in the hospital about the crash. Finally, the vehicle that was involved in the accident belonged to defendant's grandmother, and she testified that on the day of the accident she saw defendant leave in the vehicle by himself. Taken together and in the light most favorable to the State, all of that evidence was sufficient to prove defendant had been driving the vehicle at the time of the accident. Although defendant testified at trial that he was not driving the vehicle at the time, it was for the jury to decide whether defendant's testimony in that regard was believable. See *Jimerson*, 127 Ill. 2d at 43.

¶ 37 Second, although defendant challenges the blood test result, claiming that the chain of custody and other foundational elements were lacking, such a challenge is a challenge to the admissibility of the evidence and not a challenge to the sufficiency of the evidence. See *People v. Woods*, 214 Ill. 2d 455, 471 (2005) (rejecting the notion that a defendant's challenge to the chain of custody was a question of the sufficiency of the evidence); *People v. Muhammad*, 398 Ill. App. 3d 1013, 1016-18 (2010) (same). Substantively, the blood test results that were admitted, along with the testimony regarding the conversion of that result to a whole blood level, clearly showed that defendant's BAC at the time of the accident was 0.08 or greater. We, therefore, reject defendant's assertion on this issue. In doing so, we must note that defendant was found guilty of the other aggravated DUI charge as well and that there was ample evidence presented, in addition to the blood test results, to establish that defendant was under the influence of alcohol at the time of the crash.

¶ 38 ### C. Admissibility of the Hospital Blood Test Results

¶ 39 As his third and final contention on appeal, defendant argues that the trial court erred in admitting defendant's hospital blood test results into evidence at defendant's trial. In support of that argument, defendant asserts first that the blood test results should not have been admitted because Illinois Rule of Evidence 803(6) (eff. Apr. 26, 2012), which defendant claims controls in this case, prohibits the use of the business records exception to admit medical records in criminal cases. In making that assertion, defendant acknowledges that section 11-501.4 of the Vehicle Code specifically allows for the admission of blood test results in a DUI prosecution if the proper foundational requirements have been satisfied. Defendant maintains, however, that a conflict exists between the statute (section 11-501.4) and the rule of evidence (Rule 803(6)) and that the rule of evidence controls, therefore, because it is a rule of the supreme court. See *People v. Peterson*, 2017 IL 120331, ¶¶ 31, 34 (indicating that when a statute conflicts with a rule of the supreme court, such as a rule of evidence, the supreme court rule controls). Second, and in the alternative, defendant asserts that the blood test results also should not have been admitted because the State failed to establish the proper foundational requirements for admission (as set forth in more detail in defendant's argument on the second issue in this case). For all the reasons stated, defendant asks that we reverse his convictions of aggravated DUI (count I) and aggravated DUI BAC (count II) and that we remand this case to the trial court for a new trial.

¶ 40 The State argues that the blood test results were properly admitted and that the trial court's ruling in that regard should be upheld. As to defendant's claim that Illinois Rule of Evidence 803(6) prohibits the admission of the blood test results as a business record, despite the admissibility provision contained in section 11-501.4 of the Vehicle Code, the State points to *People v. Hutchison*, 2013 IL App (1st) 102332, ¶¶ 18, 24, a case where the Appellate Court, First District, specifically ruled on that issue and found that the hospital blood test results were

admissible. The State asks that we follow the approach set forth in *Hutchison*, that we find that all of the requirements for admissibility of the blood test results under section 11-501.4 of the Vehicle Code were satisfied, that we find that the blood test results were properly admitted, and that we affirm defendant's convictions.

¶ 41    A determination of the admissibility of evidence is in the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *People v. Pikes*, 2013 IL 115171, ¶ 12; *People v. Illgen*, 145 Ill. 2d 353, 364 (1991). Under the abuse of discretion standard, the appellate court owes some deference to the trial court's ability to evaluate the evidence's impact on the jury. *People v. Donoho*, 204 Ill. 2d 159, 186 (2003). The threshold for finding an abuse of discretion is a high one and will not be overcome unless it can be said that the trial court's ruling was arbitrary, fanciful, or unreasonable, or that no reasonable person would have taken the view adopted by the trial court. See *In re Leona W.*, 228 Ill. 2d 439, 460 (2008); *Donoho*, 204 Ill. 2d at 182. Reasonable minds can disagree about whether certain evidence is admissible without requiring a reversal of a trial court's evidentiary ruling under the abuse of discretion standard. See *Donoho*, 204 Ill. 2d at 186.

¶ 42    As the parties' arguments indicate, defendant's blood test results in the present case were admitted under the business records exception to the hearsay rule pursuant to section 11-501.4 of the Vehicle Code. Section 11-501.4 provides:

"(a) Notwithstanding any other provision of law, the results of blood *** tests performed for the purpose of determining the content of alcohol *** of an individual's blood *** conducted upon persons receiving medical treatment in a hospital emergency room are admissible in evidence as a business record exception to the hearsay rule only in prosecutions for any violation of Section 11-501 of this Code *** when each of the following criteria are met:

(1) the chemical tests performed upon an individual's blood *** were ordered in the regular course of providing emergency medical treatment and not at the request of law enforcement authorities;

(2) the chemical tests performed upon an individual's blood *** were performed by the laboratory routinely used by the hospital; and

(3) results of chemical tests performed upon an individual's blood *** are admissible into evidence regardless of the time that the records were prepared.

(b) The confidentiality provisions of law pertaining to medical records and medical treatment shall not be applicable with regard to chemical tests performed upon an individual's blood *** under the provisions of this Section in prosecutions as specified in subsection (a) of this Section. No person shall be liable for civil damages as a result of the evidentiary use of chemical testing of an individual's blood *** test results under this Section, or as a result of that person's testimony made available under this Section." 625 ILCS 5/11-501.4 (West 2016).

¶ 43    Illinois Rule of Evidence 803(6) (eff. Apr. 26, 2012), upon which defendant relies, generally prohibits the use of the business records exception to admit "medical records in criminal cases." Section 115-5(c) of the Code of Criminal Procedure of 1963 contains a similar prohibition. See 725 ILCS 5/115-5(c) (West 2016). However, as the appellate court recognized in *Hutchison*, although medical records cannot normally be admitted as business records in criminal cases, through section 11-501.4 of the Vehicle Code, the legislature determined that

- 12 -

lab reports of hospital blood tests conducted in the regular course of providing emergency medical treatment are admissible in DUI prosecutions under the business records exception to the hearsay rule. See *Hutchison*, 2013 IL App (1st) 102332, ¶ 18. In addition, as the appellate court pointed out in *Hutchison*, section 11-501.4 of the Vehicle Code sets forth the specific foundational requirements that must be satisfied for the blood alcohol test results to be admitted. See 625 ILCS 5/11-501.4 (West 2016); *Hutchison*, 2013 IL App (1st) 102332, ¶ 18.

¶ 44    Having considered this issue in the present case, we agree with the approach of the First District in *Hutchison*.[5] We find, therefore, that section 11-501.4 of the Vehicle Code specifically allows the hospital blood test results to be admitted at defendant's trial, despite the more general prohibitions contained in Rule 803(6) of the Illinois Rules of Evidence and in section 115-5(c) of the Code of Criminal Procedure. See 625 ILCS 5/11-501.4 (West 2016); *Hutchison*, 2013 IL App (1st) 102332, ¶¶ 18, 24. Furthermore, contrary to defendant's assertion on appeal, we find that the testimony of Dr. Gaither and nurse Wilkinson was sufficient to establish the foundational requirements for the admission of the hospital blood test results. Thus, we conclude that the hospital blood test results were properly admitted into evidence at defendant's trial.

¶ 45                                    III. CONCLUSION

¶ 46    For the foregoing reasons, we affirm the judgment of the circuit court of Rock Island County.

¶ 47    Affirmed.

¶ 48    JUSTICE HOLDRIDGE, concurring in part and dissenting in part:

¶ 49    I concur in part and dissent in part. I agree that the trial court properly denied the defendant's motion to suppress evidence, and I join the majority's judgment and analysis as to that issue. I further agree that the evidence was sufficient to prove beyond a reasonable doubt that the defendant was driving the vehicle at the time of the accident. I therefore join the majority in affirming the defendant's conviction for aggravating driving while license revoked. However, I would reverse the defendant's DUI convictions because, in my view, the trial court erred in admitting the defendant's hospital blood test results into evidence.

¶ 50    Normally, a trial court's decision regarding the admission or exclusion of evidence rests within its sound discretion and will not be disturbed absent an abuse of that discretion. *Naleway v. Agnich*, 386 Ill. App. 3d 635, 647 (2008). However, where the issue on appeal is not whether the trial court properly exercised its discretion to exclude evidence but instead whether the trial court misinterpreted the law in excluding evidence, the question presented on appeal is one of law, and our review is *de novo*. *Id.*; see also *People v. Williams*, 188 Ill. 2d 365, 369 (1999) (ruling that "a trial court must exercise its discretion within the bounds of the law," and "[w]here the question presented is one of law, a reviewing court determines it independently of the trial court's judgment" (internal quotation marks omitted)); *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 154, (2007) (questions of law are reviewed *de novo*); see also *Najas*

---

[5]On a separate point and as indicated in our discussion on the previous issue, our view of how the supreme court's decision in *Woods* would apply to the second issue in this case is somewhat different from the view of the appellate court in *Hutchison*. See *Hutchison*, 2013 IL App (1st) 102332, ¶ 18.

*Cortes v. Orion Securities, Inc.*, 362 Ill. App. 3d 1043, 1047 (2005) (a trial court abuses its discretion when it makes an error of law).

¶ 51 In this case, our review of the trial court's decision to admit the defendant's hospital blood test results depends upon the proper interpretation of Illinois Rule of Evidence 803(6) (eff. Apr. 26, 2012). Specifically, we must determine whether Rule 803(6) conflicts with section 11-501.4 of the Vehicle Code (625 ILCS 5/11-501.4 (West 2016)) as to the admissibility of medical records in criminal cases and, if so, how that conflict should be resolved. These are legal questions, which we review *de novo*. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 332 (2002) (the construction of a supreme court rule presents a question of law, which is reviewed *de novo*); *Batson v. Township Village Associates, LP*, 2019 IL App (5th) 170403, ¶ 14; *Doe v. Coe*, 2017 IL App (2d) 160875, ¶ 10.

¶ 52 We construe supreme court rules in the same manner that we construe statutes. *Robidoux*, 201 Ill. 2d at 332; *In re Estate of Burd*, 354 Ill. App. 3d 434, 437 (2004). Our primary task is to ascertain and give effect to the drafters' intent, which is best indicated by the plain and ordinary meaning of the language used. *Robidoux*, 201 Ill. 2d at 332; *Ferris, Thompson & Zweig, Ltd. v. Esposito*, 2017 IL 121297, ¶ 22. We will interpret a rule such that no part of it is rendered meaningless or superfluous, and we will not depart from the rule's plain language by reading into the rule exceptions, limitations, or conditions that conflict with the drafters' expressed intent. *Ferris, Thompson & Zweig, Ltd.*, 2017 IL 121297, ¶ 22; *Bohle v. OSF Healthcare System*, 2018 IL App (2d) 160975, ¶ 17. If the language of a supreme court rule is clear and unambiguous, we must apply the language used without resort to any further aids of construction. *In re Estate of Rennick*, 181 Ill. 2d 395, 404-05 (1998); see also *People v. Blair*, 2011 IL App (2d) 070862, ¶ 33 ("Where the language of a rule is clear and unambiguous, it will be given effect without resort to any other interpretive aids.").

¶ 53 If the language of a rule is ambiguous (*i.e.*, susceptible to more than one reasonable interpretation), we may look to the rule's committee comments for guidance in interpreting and applying the rule. *Boehle*, 2018 IL App (2d) 160975, ¶ 17; *Batson*, 2019 IL App (5th) 170403, ¶ 14. However, the committee comments are not binding (*Robidoux*, 201 Ill. 2d at 332; *Hornburg v. Esparza*, 316 Ill. App. 3d 801, 806 (2000); *Estate of Burd*, 354 Ill. App. 3d at 437)), and they may be considered as persuasive authority only when the rule's meaning is not clear from the language of the rule itself (*People v. Ross*, 168 Ill. 2d 347, 352 (1995); *Hornburg*, 316 Ill. App. 3d at 806). In other words, the committee comments may only be used to help resolve a preexisting ambiguity in the rule; they may not be used to *create* an ambiguity as to the interpretation or application of an otherwise unambiguous rule. *Estate of Rennick*, 181 Ill. 2d at 404-05 (unambiguous rule must be applied as written without resort to any further aids of construction); see also *People v. Allen*, 313 Ill. App. 3d 842, 846 (2000), *rejected on other grounds by People v. Garstecki*, 382 Ill. App. 3d 802 (2008) ("There is no rule of construction that allows the court to declare that the legislature did not mean what the plain language of the statute imports").

¶ 54 Rule 803(6) creates an exception to the hearsay rule for certain business records "[e]xcept for medical records in criminal cases." Ill. R. Evid. 803(6) (eff. Apr. 26, 2012). Thus, as the majority acknowledges, the plain language of Rule 803(6) prohibits the use of the business records exception to admit medical records in criminal cases. *Supra* ¶ 43. Section 11-501.4 of the Vehicle Code, by contrast, authorizes the admission of lab reports of hospital blood tests in certain criminal DUI prosecutions, subject to certain foundational requirements. By their

plain terms, the statute and the rule are in direct conflict. The majority does not contend (and cannot reasonably contend) that either the statute or the rule is ambiguous. Nevertheless, following our appellate court's decision in *People v. Hutchison*, 2013 IL App (1st) 102332, the majority holds that the defendant's hospital blood test results were properly admitted under section 11-501.4 of the Vehicle Code.

¶ 55 In my view, *Hutchison* was wrongly decided. In ruling that a blood alcohol test conducted by a hospital lab was admissible in a criminal DUI prosecution (notwithstanding Rule 803(6)'s clear pronouncement to the contrary), *Hutchison* relied entirely upon one of the committee comments to the Illinois Rules of Evidence, which states that "[i]t is important to note that the Illinois Rules of Evidence are not intended to abrogate or supersede any current statutory rules of evidence. The Committee sought to avoid in all instances affecting the validity of any existing statutes promulgated by the Illinois legislature." Ill. R. Evid., Committee Commentary (eff. Jan. 1, 2011). However, as noted above, Rule 803(6)'s blanket prohibition on the admission of medical records in criminal cases is unqualified and unambiguous. Accordingly, the *Hutchison* court erred by considering the nonbinding committee comments in interpreting Rule 803(6) (*Estate of Rennick*, 181 Ill. 2d at 404-05) and by using them to read an exception or limitation into the rule that conflicts with the rule's plain terms (*Ferris, Thompson & Zweig, Ltd.*, 2017 IL 121297, ¶ 22). Contrary to the *Hutchison* court's assumption, the rule's committee comments cannot eliminate the conflict between section 11-501.4 and Rule 803(6).

¶ 56 The Illinois Supreme Court has the primary constitutional authority over court procedure (*People v. Peterson*, 2017 IL 120331, ¶ 31), including the manner by which evidence may be introduced into the courts (*id.*; see also *People v. Bond*, 405 Ill. App. 3d 499, 508-09 (2010)). Thus, where a statute conflicts with rule of evidence promulgated by our supreme court, the supreme court rule prevails. *Peterson*, 2017 IL 120331, ¶ 31; *Bond*, 405 Ill. App. 3d at 509; see also Ill. R. Evid. 101 (eff. Jan. 1, 2011) ("A statutory rule of evidence is effective *unless in conflict with a rule or a decision of the Illinois Supreme Court*." (Emphasis added.)); see generally *People v. Walker*, 119 Ill. 2d 465, 475 (1988) ("where *** a legislative enactment directly and irreconcilably conflicts with a rule of this court on a matter within the court's authority, the rule will prevail").

¶ 57 Accordingly, I would decline to follow *Hutchison*, and I would hold that the hospital blood test results in this case were inadmissible pursuant to Rule 803(6). I would therefore reverse the defendant's convictions for aggravated DUI and aggravating driving with a blood alcohol concentration of 0.08 or greater and remand for further proceedings on those counts.